THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VICTOR MORALES, Defendant-Appellant.

First District (3rd Division)    No. 79-1618

Opinion filed December 23, 1981.

Ralph Ruebner and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Warren A. Zimmerman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a bench trial the defendant, Victor Morales, was convicted of delivery of a controlled substance (Ill. Rev. Stat. 1973, ch. 56½, par.

1401(a)) and sentenced to a term of four years to four years and a day. On appeal the defendant contends that (1) he was not proved guilty beyond a reasonable doubt; (2) the court's denial of his motion to produce an informant deprived him of a fair trial; and (3) the court's failure to compel a witness to testify deprived him of his right to due process.

Santos Claudio, a former agent of the Illinois Bureau of Investigation, testified that on January 6, 1976, he entered "The Electric Lady," a poster shop owned by the defendant and located at 909 N. Damen Avenue in Chicago. The defendant and two other men were present in the store. One of the men resembled the defendant but was taller and heavier. Claudio told the men that he was interested in purchasing some heroin. After some discussion, an agreement was reached concerning the price. The defendant asked Claudio for his name and telephone number. Claudio wrote his name on a piece of paper but stated that he did not have a telephone. The defendant gave Claudio his phone number, and Claudio told him that he would call the defendant the following day.

On January 7, 1976, after meeting with his supervisor and other officers, Claudio called the defendant's number and recognized the defendant's voice. Claudio asked if he was "ready to do the deal." The defendant responded affirmatively.

At approximately 1:40 p.m. Claudio returned to the defendant's store. Claudio greeted the defendant and followed him to the back of the store. The defendant asked for the money and told Claudio he would tell him where to pick up "the stuff." Claudio objected to giving the money before the deal was completed. At this point Sebastian Ortega entered the store. Pursuant to defendant's instructions, Ortega accompanied Claudio to Claudio's automobile in order to count the money. Claudio showed Ortega $1350 in cash. Ortega left the vehicle and returned a few moments later. Ortega handed Claudio a brown paper bag which contained a tin foil package. Inside the tin foil were two packages of cellophane containing brown powder. The powder had a "vinegary acid type smell" which Claudio believed to be heroin. Claudio gave Ortega the money and depressed the brake of his car, which was a signal for certain surveillance agents. The agents arrested both Ortega and the defendant.

On cross-examination Claudio stated that he was first introduced to the defendant in November 1975 by Jose Torres, an informer. Claudio's report concerning this meeting was captioned "J. Morales." Claudio's report concerning the events of January 6 and 7 did not contain any reference to the phone conversation with the defendant. The inventory sheet which Claudio had prepared prior to the transaction at the store was captioned "J. Morales."

The parties stipulated that a chemist from the Department of Law Enforcement would testify that he tested the contents of a packet

delivered to him by Claudio. The packet weighed 35.9 grams and contained heroin.

After the State rested, the defendant presented a motion asking the State to produce Jose Torres, the informer who allegedly introduced Claudio to the defendant. It was defendant's position that this meeting never occurred. The trial court denied this motion.

The defendant called as a witness Sebastian Ortega, who previously had pled guilty to the delivery of the heroin. After consulting with an assistant public defender, Ortega asserted his fifth amendment privilege against self-incrimination. The trial court denied defendant's request to compel Ortega to testify.

The defendant testified that he first met Claudio on January 6, 1976, when the agent entered the defendant's store. When Claudio expressed an interest in purchasing some heroin, the defendant told Claudio he did not know him. Claudio then spoke to defendant's brother, John Morales, who also was present in the store.

The defendant testified that he neither gave Claudio his telephone number nor received a phone call from him. On the afternoon of January 7, Claudio entered the store and began discussing his purchase of heroin. The defendant told Claudio that he knew nothing about this purchase. At this point Ortega came to the door of the store, and Ortega and Claudio left the store together.

The defendant testified that he did not give Ortega any heroin. He stated that his brother, John Morales, sold drugs. He further testified that he did not know the informer, Jose Torres.

Santos Claudio testified in rebuttal that he knew John Morales. John Morales was not in the store on January 7 when Claudio purchased the heroin.

I

The defendant first contends that the State did not establish beyond a reasonable doubt that he was the individual who negotiated with Claudio concerning the purchase of the heroin. The defendant attacks Claudio's identification and points out that Claudio's reports were captioned "J. Morales." According to the defendant, such evidence supports his position that Claudio was dealing with his brother, John, and raises serious doubts concerning the validity of Claudio's identification.

■■ The testimony of one witness, if positive and credible, is sufficient to convict notwithstanding that the testimony is contradicted by the accused. *People v. Thresher* (1963), 26 Ill. 2d 604, 188 N.E.2d 26.

The facts in the instant case reveal that Claudio had ample opportunity to positively identify the defendant. Claudio testified that he was introduced to the defendant in November of 1975. Claudio met the

defendant in his store on January 6, 1976, and made arrangements to purchase some heroin. The following day the defendant and Claudio conversed on the telephone concerning the purchase. Later that day Claudio went to the defendant's store and discussed the purchase with him. The defendant instructed Ortega to accompany Claudio to his car in order to consummate the transaction. Although Claudio knew the defendant's brother, John Morales, he stated that John was not in the store on the day of the purchase.

We believe that this testimony was more than sufficient to support the conviction. The fact that Claudio's reports were erroneously captioned "J. Morales" does not weaken Claudio's positive identification of the defendant as the individual involved in the transaction.

■■ The defendant also points out that the State failed to produce the informer, Jose Torres, to corroborate Claudio's testimony that he was introduced to the defendant by Torres in November of 1975. At trial the defendant denied that such a meeting occurred. The defendant now argues that the State's failure to produce Torres created a presumption that his testimony would have been adverse to the State. *People v. Plum* (1976), 44 Ill. App. 3d 922, 358 N.E.2d 1235.

We do not believe that the holding in *Plum* has any applicability to the instant case. In *Plum* the State failed to produce an occurrence witness; here Torres was not involved at all in the purchase of the heroin. The State's failure to produce Torres in no way affected the credibility of Claudio's identification.

## II

■■ The defendant also argues that he was denied a fair trial when the trial court refused to order the State to produce the informer, Jose Torres. The defendant contends that Torres would have testified that, contrary to Claudio's assertion, Torres never introduced Claudio to the defendant. Such testimony, according to the defendant, would have weakened the credibility of the State's key witness.

The defendant relies on *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623, in which the United States Supreme Court held that the trial court committed prejudicial error in permitting the government to withhold the identity of an informer who had purchased heroin from the defendant. The informer was the sole participant, other than the defendant, in the transaction charged. The Supreme Court held that although there can be no fixed rule with respect to disclosure, the government's privilege to withhold the identity of an informer must give way when the disclosure of the identity is relevant and helpful to the defense of an accused.

The instant case is clearly distinguishable from *Roviaro*. First, it is

undisputed that the defendant knew the identity of the informer. The first mention of an informer occurred when defendant's attorney asked Claudio on cross-examination whether he had been introduced to the defendant by Jose Torres, an informer. In addition, Torres neither participated in the crime nor was present at the time of the arrest. (See *People v. Durr* (1963), 28 Ill. 2d 308, 192 N.E.2d 379, *cert. denied* (1964), 376 U.S. 973, 12 L. Ed. 2d 87, 84 S. Ct. 1138; *People v. Mack* (1957), 12 Ill. 2d 151, 145 N.E.2d 609.) Torres' testimony could not have provided any corroboration of the defendant's version of the events which occurred in the store. We also note that the defendant waited until the State had completed the presentation of its case before presenting his motion to produce. Under these circumstances, we believe that there was no error in the denial of the defendant's motion.

## III

The defendant's final argument is that the court erred by refusing to compel Sebastian Ortega to testify. When called as a witness, Ortega asserted his fifth amendment privilege against self-incrimination. The defendant contends that Ortega waived this privilege when he pled guilty to the delivery of the heroin. The State responds that Ortega was entitled to invoke the privilege because when he was called as a witness, time remained in which he could move to withdraw his guilty plea. Ill. Rev. Stat. 1977, ch. 110A, par. 604(d).

■■ A defendant who enters a plea of guilty waives his privilege against compulsory self-incrimination. (*McCarthy v. United States* (1969), 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166.) The State argues that the privilege is not waived at the moment the plea is made but at the expiration of the period in which the defendant can withdraw that plea. The State cites *State v. Tyson* (1964), 43 N.J. 411, 204 A. 2d 864, *cert. denied* (1965), 380 U.S. 987, 14 L. Ed. 2d 279, 85 S. Ct. 1359, in which the New Jersey Supreme Court held that a witness who pled guilty to a criminal charge, but had not yet been sentenced, retained his privilege against self-incrimination. The court pointed out that if the witness was compelled to testify, his answers, if incriminating, would have been persuasive grounds for a court, in the exercise of its discretion, to deny a motion to withdraw the plea. The court concluded that forcing the witness to testify would tend, as a practical matter, to make the guilty plea irrevocable. See also *People v. Kizzee* (1979), 94 Cal. App. 3d 927, 156 Cal. Rptr. 784; *Commonwealth v. Garland* (1977), 475 Pa. 389, 380 A. 2d 777.

Although Ortega had been sentenced at the time he was called as a witness, there still was time remaining during which he could have filed a motion to withdraw his plea. We have been unable to find any cases, and

the parties have not cited any cases, involving this precise issue. However, we believe the rationale in *Tyson* is equally applicable to the instant case. For this reason, we hold that the trial court committed no error when it permitted Ortega to invoke his privilege against self-incrimination since time remained during which he could have filed a motion to withdraw his plea.

For the foregoing reasons, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

RIZZI, P. J., and McNAMARA, J., concur.