(No. 107242.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TONY OUSLEY *et al.*, Appellees.

*Opinion filed September 24, 2009.—Rehearing denied November 23, 2009.*

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine and Anita Alvarez, State's Attorneys, of Chicago (James E. Fitzgerald, Alan J. Spellberg and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

Kenneth W. Goff, of Orland Park, and Jason F. Danielian, of Homewood, for appellees.

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

At issue in this case is whether the Illinois use immunity statute (725 ILCS 5/106—2.5 (West 2006)) is mandatory or permissive. The State filed a motion in the circuit court of Cook County seeking an order allowing it to grant use immunity to Tyrese Jackson in order to compel his testimony against his codefendants, Tony Ousley and Dariento Atterberry. The trial court denied the State's motion. The appellate court affirmed, holding that the use immunity statute is permissive, so that the trial court did not err in denying the State's motion. 383 Ill. App. 3d 1073. The State then petitioned this court for leave to appeal pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315(a)). We allowed the State's petition for leave to appeal and now reverse the lower courts.

## BACKGROUND

The February 2004 grand jury of Cook County returned indictments charging defendants Tyrese Jackson, Tony Ousley and Dariento Atterberry with multiple counts of first degree murder, attempted first degree

murder, and aggravated discharge of a firearm. The charges stemmed from the February 7, 2004, murder of Brian Hill and the attempted first degree murder of Rufus McDaniels and Anthony Bryant. At the time of his arrest, defendant Jackson gave a videotaped statement.

Following pretrial discovery, the State filed a motion to allow "use immunity" to compel Jackson to testify against Ousley and Atterberry (defendants). The motion stated that Jackson was an indicted codefendant and had a fifth amendment right not to testify against defendants. The State intended to call Jackson as a witness at trial, granting him use immunity pursuant to section 106—2.5(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/106—2.5(b) (West 2006)) to compel his testimony in his codefendants' case. The motion stated that if Jackson testified inconsistently with his videotaped statement, the State planned to introduce Jackson's videotaped statement as substantive evidence against defendants pursuant to section 115—10.1 of the Code (725 ILCS 5/115—10.1 (West 2006)). The State requested that the trial court allow Jackson to testify against defendants and requested that the court grant Jackson immunity from prosecution as to any information directly or indirectly derived from the production of evidence during Jackson's testimony.

Defendants filed a response to the State's motion. Defendants alleged that Jackson gave his videotaped statement pursuant to the State's promise of leniency. Defendants believed Jackson would deny the veracity of his videotaped statement and, if granted use immunity, would not testify to anything of substance, so that the State would then seek to introduce Jackson's videotaped statement to impeach his testimony. Defendants maintained that the introduction of Jackson's videotaped statement against them would circumvent the rules of evidence as well as the rule set forth in *Bruton v. United*

*States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968). Further, the State could not vouch for the veracity of Jackson's testimony or set forth a legitimate offer of proof that Jackson would testify to anything of substance. Defendants therefore asked that the trial court preclude Jackson from testifying, preclude the State from introducing Jackson's videotape into evidence, and require the State to provide, as a condition precedent to calling Jackson as a witness in any capacity, an offer of proof of what the State expected Jackson to testify to at trial.

Following a hearing, the trial court denied the State's motion. The trial court believed that granting the State's motion would create problems under both *Bruton* and *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). In *Bruton*, the United States Supreme Court held that the admission of a statement, at a joint trial, by a nontestifying codefendant that expressly implicates the defendant in the crime violates the defendant's constitutional right to confront witnesses against him. *Bruton*, 391 U.S. at 137, 20 L. Ed. 2d at 485-86, 88 S. Ct. at 1628. In *Crawford*, the Court held that testimonial out-of-court statements may be admitted as evidence at trial only if the declarant testifies, or if the declarant is unavailable the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354.

With regard to *Bruton*, the court stated, "[A]s far as I am concerned, Mr. Jackson, he is still a co-defendant, I don't care if he is going to be severed, if he is going to be tried differently, he is still a co-defendant in this case, so that is one of our main concerns." The trial court also stated that if Jackson refused to testify on the stand, defendants would not have an opportunity for effective cross-examination, thus presenting a problem under *Crawford*.

The State then filed a motion to reconsider. The State observed that the use immunity statute provided that on motion of the State, the court "shall" order that a witness be granted immunity. The State argued that the plain language of the statute made clear that there are no restrictions on who can receive use immunity and that the State has the sole discretion to grant use immunity. Further, if Jackson testified under a grant of use immunity, he would be subject to cross-examination, so that there would be no *Crawford* violation. In addition, if Jackson refused to testify under use immunity, the State would not, and could not, under *Bruton*, enter Jackson's videotaped statement into evidence against defendants.

The trial court denied the State's motion to reconsider. The trial court agreed with the State's interpretation of "shall" as mandatory, but refused to give Jackson use immunity given the court's constitutional concerns regarding *Crawford* and *Bruton*. Thereafter, the State filed a certificate of substantial impairment (210 Ill. 2d R. 604(a)(1)) and notice of appeal.

On appeal, the State argued that the trial court lacked the authority to deny its motion under the use immunity statute. The State also argued that the constitutional issues relied upon by the trial court were not ripe for adjudication. In affirming the trial court, the appellate court held that the trial court did not err in ruling on the constitutional *Bruton* and *Crawford* issues. 383 Ill. App. 3d at 1077. With regard to the statute, the appellate court concluded that the statute was permissive rather than mandatory, so that the trial court did not err in denying the State's motion to grant use immunity. 383 Ill. App. 3d at 1077.

The State filed a petition for rehearing in the appellate court, pointing out that the court's presumption that the three codefendants would be tried together in a

joint trial was incorrect.[1] The appellate court denied the State's petition for rehearing.

## ANALYSIS

As a threshold matter, we must address whether this case is moot because Jackson has pled guilty in connection with the underlying case. A case becomes moot when the issues involved in the trial court have ceased to exist because intervening events have made it impossible for the reviewing court to render effectual relief to the complaining party. *People v. Roberson*, 212 Ill. 2d 430, 435 (2004). A reviewing court should not decide a case where the judgment would have only an advisory effect. *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 8 (1997). In addition, this court does not review cases merely to set precedent or to guide future litigation. *Berlin*, 179 Ill. 2d at 8.

At oral argument in this case, questions arose concerning whether Jackson's guilty plea rendered this appeal moot. Upon review, we find that the appeal has not been rendered moot. A central concern of the lower courts in denying the State's motion to grant use immunity was the fact that Jackson's trial had not been severed from defendants' trial. However, the trial court also found that even if Jackson's trial was severed, a *Bruton* problem would remain because Jackson was still a codefendant, presumably as opposed to a witness, in the case. The trial court additionally denied the State's motion based upon its finding of a potential *Crawford* issue, which would arise if Jackson was granted use im-

---

[1]At the time the State filed its motion to allow use immunity, Jackson's trial had not been severed from that of defendants. Although defense counsel discussed severing Jackson's trial from that of defendants at pretrial hearings, it does not appear that a written motion to sever was ever filed. The State notes in its brief that Jackson has since entered a guilty plea to first degree murder, although he still refuses to testify against defendants.

munity and continued to refuse to testify on the stand. Both issues remain even though it is now undisputed that Jackson will not be tried with defendants. Consequently, Jackson's guilty plea does not render this case moot.

Under the fifth amendment, a witness in a criminal case may refuse to answer questions which might incriminate him when he has reasonable cause to believe he might subject himself to prosecution if he answers. *People v. Edgeston*, 157 Ill. 2d 201, 220 (1993). Thus, immunity statutes seek a rational accommodation between the imperatives of the privilege against self-incrimination and the legitimate demands of the government to compel citizens to testify. *Kastigar v. United States*, 406 U.S. 441, 445-46, 32 L. Ed. 2d 212, 217-18, 92 S. Ct. 1653, 1656-57 (1972). In general, once a defendant enters a plea of guilty, he waives his privilege against compulsory self-incrimination. *People v. Williams*, 188 Ill. 2d 365, 370 (1999). This court must determine, then, whether Jackson's guilty plea waived his privilege against compulsory self-incrimination, so that the State no longer needs use immunity in order to compel Jackson's testimony against his codefendants.

As our appellate court has recognized, a defendant may raise the fifth amendment shield until his conviction has become final. *People v. Dmitriyev*, 302 Ill. App. 3d 814, 820 (1998). In this case, although Jackson has pled guilty, we have no evidence or information establishing that Jackson's conviction has become final. We do not know whether sentence has been imposed, whether time remains to file a motion to withdraw the guilty plea, whether the time for appeal has passed, or whether Jackson plans to collaterally attack his guilty plea. See *People v. Edgeston*, 157 Ill. 2d 201 (1993) (despite guilty plea, real danger of incrimination remained, allowing accomplice to assert privilege against self-incrimination in

defendant's trial because accomplice intended to collaterally challenge his guilty plea and renege on plea agreement); *People v. Morales*, 102 Ill. App. 3d 900 (1981) (trial court correctly allowed witness to invoke privilege against self-incrimination even though witness had pled guilty and been sentenced, because time for filing a motion to withdraw his guilty plea remained); *People v. Hartley*, 22 Ill. App. 3d 108 (1974) (witness' conviction was not final because sentence had not been imposed and time for appeal had not expired; therefore, even though witness had been convicted, witness could claim privilege against self-incrimination at trial of his codefendant); see also *People v. Smith*, 34 Mich. App. 205, 211, 191 N.W.2d 392, 394-95 (1971) (privilege against self-incrimination was not waived where witness could still withdraw his guilty plea or could still prosecute an appeal). Under the circumstances, then, the mere fact that Jackson has pled guilty does not render his conviction final.

Moreover, we note that Jackson pled guilty to first degree murder, although he also was charged with attempted first degree murder and aggravated discharge of a firearm. As the federal circuit court has stated, "[w]e are not convinced that pleading guilty to counts involving one set of offenses by its own force can waive a privilege with respect to other alleged transgressions for which charges are dropped, and which were not admitted." *United States v. Yurasovich*, 580 F.2d 1212, 1218 (3d Cir. 1978). As *Yurasovich* explained:

> "In any event, the better-reasoned authorities construe the language cited by the government to infer a waiver of Fifth Amendment rights solely with respect to the crime to which the guilty plea pertains. If such crime is the only one for which the defendant is potentially liable, he can be forced to testify. But if the witness is still subject to prosecution for other crimes which his testimony might tend to reveal, the privilege remains." *Yurasovich*, 580 F.2d at 1218.

Here, Jackson is potentially subject to prosecution for the charges that have been dropped, but which his testimony at defendant's trial might tend to reveal. Therefore, Jackson's privilege against self-incrimination remains, and the issue in this case is not rendered moot by Jackson's guilty plea.

We therefore consider the merits of this appeal. The State argues that the appellate court erred in holding that the use immunity statute is permissive and that the trial court properly denied the State's motion to grant Jackson use immunity. According to the State, once the trial court determined that the State's motion to grant use immunity was in the proper procedural form under section 106—2.5(b), the trial court had no discretion to deny the motion. The State also argues that the appellate court erred in holding that the trial court's constitutional concerns were ripe for adjudication. Moreover, the lower courts' resolution of the constitutional issues was incorrect.

Because this case presents an issue of statutory construction, our review is *de novo*. *People v. Robinson*, 217 Ill. 2d 43, 54 (2005). In construing statutes, this court's primary duty is to give effect to the intent of the legislature. *Holly v. Montes*, 231 Ill. 2d 153, 159 (2008). The best indicator of legislative intent is the language of the statute, which is given its plain and ordinary meaning. *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 226 Ill. 2d 559, 567 (2007). This court will not depart from the plain language of a statute by reading into it exceptions, limitations or conditions that conflict with the express legislative intent. *Rosewood Care Center*, 226 Ill. 2d at 567.

The use immunity statute provides, in relevant part:

"(b) In lieu of the immunity provided in Section 106—2 of this Code, in any investigation before a Grand Jury, or trial in any court, the court on motion of the State *shall order* that a witness be granted immunity from prosecu-

tion in a criminal case as to any information directly or indirectly derived from the production of evidence from the witness if the witness has refused or is likely to refuse to produce the evidence on the basis of his or her privilege against self-incrimination.

(c) The production of evidence so compelled under the order, and any information directly or indirectly derived from it, may not be used against the witness in a criminal case, except in a prosecution for perjury, false swearing, or an offense otherwise involving a failure to comply with the order. An order of immunity granted under this Section does not bar prosecution of the witness, except as specifically provided in this Section." (Emphasis added.) 725 ILCS 5/106—2.5 (West 2006).

In analyzing the use immunity statute, the appellate court rejected the State's argument that the word "shall" in the statute indicated that the statute was mandatory. The appellate court held that the State placed too much weight on the word "shall." 383 Ill. App. 3d at 1076. The appellate court acknowledged that legislative use of the word "shall" generally is considered to express a mandatory reading, but concluded that the word "shall" did not control the outcome in this case and was not determinative. 383 Ill. App. 3d at 1076. Citing to this court's decision in *People v. Robinson*, 217 Ill. 2d 43 (2005), the appellate court noted that when a statute expressly prescribes a consequence for the failure to obey its provisions, that is strong evidence that the legislature intended the consequence to be mandatory. 383 Ill. App. 3d at 1076. The use immunity statute did not provide a consequence in the event the trial court failed to grant the State's motion for use immunity. 383 Ill. App. 3d at 1076. Consequently, the appellate court concluded that the use immunity statute was permissive rather than mandatory. 383 Ill. App. 3d at 1077.

The appellate court also rejected the State's claim that the trial court improperly addressed the *Bruton* and *Crawford* issues because those issues were not ripe for

adjudication. The appellate court stated that the State was seeking to try the codefendants together, with Jackson testifying against defendants. 383 Ill. App. 3d at 1076. The foundation of *Bruton* and its progeny is that, in the context of a joint trial, a jury cannot be expected to consider an inculpatory statement in determining the guilt or innocence of the declarant, then ignore that statement in determining the guilt or innocence of the declarant's codefendants. 383 Ill. App. 3d at 1076-77. To permit the State to compel testimony in such a situation would run afoul of *Bruton*. 383 Ill. App. 3d at 1077. Therefore, the constitutional issues were ripe for adjudication.

The appellate court likewise concluded that it would be unrealistic to expect a jury in such a joint trial to hear Jackson incriminate himself under a grant of use immunity and then ignore that self-incrimination when considering Jackson's guilt or innocence. 383 Ill. App. 3d at 1077. The appellate court noted that subsection (c) of the use immunity statute provides that testimony given under use immunity is generally not to be used against the witness in the underlying criminal case. Consequently, the appellate court concluded that reading the statute as mandatory, requiring the trial court to grant use immunity in a joint trial, where the declarant's guilt or innocence is at issue, would raise serious constitutional questions and would create an absurd result with regard to subsection (c) of the statute. 383 Ill. App. 3d at 1077.

We first address the appellate court's holding that the use immunity statute is permissive rather than mandatory. We note that in addressing whether the statute was mandatory or permissive, the appellate court applied the analysis concerning the separate question of whether a statute is mandatory or directory. This court recently addressed the confusion concerning the mandatory-permissive question and the mandatory-

directory question in *People v. Robinson*, 217 Ill. 2d 43. Because the confusion persists, we will briefly review the differences between the two questions.

Whether statutory language is mandatory or directory is a separate question from whether a statute is mandatory or permissive. *Robinson*, 217 Ill. 2d at 51. With regard to the mandatory-permissive question, this court in *Robinson* explained " '[T]he term "mandatory" refers to an obligatory duty which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses.' " *Robinson*, 217 Ill. 2d at 51, quoting *Morris v. County of Marin*, 18 Cal. 3d 901, 908, 559 P.2d 606, 610, 136 Cal. Rptr. 251, 255 (1977). In contrast, " 'the "directory" or "mandatory" designation does not refer to whether a particular statutory requirement is "permissive" or "obligatory," but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " *Robinson*, 217 Ill. 2d at 51-52, quoting *Morris*, 18 Cal. 3d at 908, 559 P.2d at 610-11, 136 Cal. Rptr. at 255-56.

*Robinson* clarified that:

"the mandatory-permissive dichotomy concerns whether the language of a statute has the force of a command that imposes an obligation, or is merely a grant of permission or a suggestion, which therefore imposes no obligation. The mandatory-directory dichotomy *** concerns the consequences of a failure to fulfill an obligation." *Robinson*, 217 Ill. 2d at 52.

Accordingly, whenever "the mandatory-directory dichotomy is at issue the word 'shall' is not determinative." *Robinson*, 217 Ill. 2d at 54. However, "when the issue is whether the force of the statutory language is mandatory or permissive, then 'shall' does usually indicate the legislature intended to impose a mandatory obligation." *Robinson*, 217 Ill. 2d at 54.

With the preceding clarification in mind, we examine the appellate court's analysis of the use immunity statute. As indicated, although citing to *Robinson*, the appellate court nonetheless confused the mandatory-directory analysis with the mandatory-permissive analysis. For example, the appellate court found that the State placed too much emphasis on the use of the word "shall" in the statute and held that "the word 'shall' does not control the outcome and is not determinative." 383 Ill. App. 3d at 1076. However, *Robinson* held that the word "shall" is not determinative when the *mandatory-directory* dichotomy is at issue. *Robinson*, 217 Ill. 2d at 54. Here, it is the *mandatory-permissive* dichotomy that is at issue. In that instance, contrary to the appellate court's finding, the word "shall" usually indicates the legislature intended to impose a mandatory obligation. *Robinson*, 217 Ill. 2d at 54.

The appellate court also stated, again citing *Robinson*, that "[w]hen a statute expressly prescribes a consequence for the failure to obey its provision, that is very strong evidence the legislature intended that consequence to be mandatory." 383 Ill. App. 3d at 1076. Because the use immunity statute did not provide a consequence in the event the trial court failed to grant the use immunity sought by the State, the appellate court construed the statute as permissive rather than mandatory. 383 Ill. App. 3d at 1077.

Here too, however, the appellate court looked to *Robinson*'s language concerning the mandatory-directory dichotomy, which was at issue in that case, to decide whether the use immunity statute was mandatory or permissive. It is in the context of the mandatory-directory dichotomy that this court looks to whether a statute prescribes a consequence for failure to obey a statutory provision. That analysis, however, has no bearing on the question of whether a statute is mandatory or permissive, which is the dispositive issue in this case.

To reiterate, in the context of determining whether a statute is mandatory or permissive, the term mandatory " 'refers to an obligatory duty which a governmental entity is required to perform,' " while permissive refers to a discretionary power, which a governmental entity " 'may exercise or not as it chooses.' " *Robinson*, 217 Ill. 2d at 51, quoting *Morris*, 18 Cal. 3d at 908, 559 P.2d at 610, 136 Cal. Rptr. at 255. With the proper framework in mind, we consider whether the use immunity statute is mandatory or permissive.

The use immunity statute provides that, upon motion of the State, the court *"shall order* that a witness be granted immunity from prosecution in a criminal case." (Emphasis added.) 725 ILCS 5/106—2.5 (West 2006). In the context of the mandatory-permissive dichotomy, the use of the word "shall" generally indicates an intention to impose a mandatory obligation. *Robinson*, 217 Ill. 2d at 54. We see no reason to ascribe a different meaning to the term in this case. The language of the use immunity statute is not merely a grant of permission or suggestion, but rather has the force of a command that imposes an obligation on the trial court to grant immunity to a witness upon motion of the State.

As the State observes, a finding that the use immunity statute is mandatory is supported by a comparison of the use immunity statute with the transactional immunity statute (725 ILCS 5/106—1 (West 2006)). The transactional immunity statute provides that:

> "In any investigation before a Grand Jury, or trial in any court, the court on motion of the State *may order* that any material witness be released from all liability to be prosecuted or punished on account of any testimony or other evidence he may be required to produce." (Emphasis added.) 725 ILCS 5/106—1 (West 2006).

It is well established that, by employing certain language in one instance, and entirely different language in another, the legislature indicated that different results

were intended. *In re K.C.*, 186 Ill. 2d 542, 549-50 (1999). Consequently, the fact that the legislature provided that, on motion of the State, a court "may" grant transactional immunity to a witness in section 106—1, but "shall" grant use immunity in section 106—2.5, further establishes that the word "shall" in the use immunity statute is mandatory rather than permissive.

Finally, we note that federal courts have long held that the federal use immunity statute is mandatory. The federal use immunity statute provides that, upon the request of the United States Attorney, the court *"shall issue* \*\*\* an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination." (Emphasis added.) 18 U.S.C. §6003(a) (2006). As the Seventh Circuit Court of Appeals has explained:

> "The legislative history of 18 U.S.C. §§ 6001-03 illustrates that one of the concerns of Congress in revising the prior immunity laws was the clarification of the roles of the various governmental branches in the immunity process so as to avoid potential constitutional conflicts. [Citation.] The role of the federal court is restricted to a ministerial function. The court may scrutinize the record to ascertain that a request for immunity is, under the statute, jurisdictionally and procedurally well-founded and accompanied by the approval of the Attorney General. [Citation.] Under no circumstances, however, may a federal court prescribe immunity on its own initiative, or determine whether application for an immunity order which is both jurisdictionally and procedurally well-founded is necessary, advisable, or reflective of the public interest, for the federal judiciary may not arrogate a prerogative specifically withheld by Congress." *In re Daley*, 549 F.2d 469, 479 (7th Cir. 1977).

See also *Pillsbury Co. v. Conboy*, 459 U.S. 248, 254 n.11, 74 L. Ed. 2d 430, 438 n.11, 103 S. Ct. 608, 612 n.11 (1983) ("Congress foresaw the courts as playing only a minor role in the immunizing process: 'The court's role in

granting the order is merely to find the facts on which the order is predicated.' [Citations.]''); *United States v. Hamilton*, 46 F.3d 271, 278 (3d Cir. 1995) (''We agree with the government that a determination regarding use immunity is a matter of prosecutorial discretion''); *Urasaki v. United States District Court*, 504 F.2d 513, 514 (9th Cir. 1974) (''In passing upon an immunity application, the (district) court is confined to an examination of the application and the documents accompanying it for the purpose only of deciding whether or not the application meets the procedural and substantive requirements of the authorizing statute'').

As with the federal statute, the Illinois legislature has given the State the exclusive authority to grant use immunity. The trial court's role is limited to examining the motion to determine whether the motion meets the procedural and substantive requirements of the use immunity statute. Once the trial court determines that the motion meets the procedural and substantive requirements of the statute, the trial court must grant the motion. As the federal courts have found, the court's role in considering a motion for use immunity essentially is ministerial, so that a court cannot decide whether a procedurally proper motion is necessary or advisable. See *In re Daley*, 549 F.2d at 479.

In this case, once the trial court determined that the State's motion was procedurally and substantively proper, the trial court was obligated to grant that motion without consideration of potential trial issues that might or might not arise. To the extent that constitutional issues concerning Jackson's testimony remain following the grant of use immunity, the proper time to address those concerns is when those issues actually arise. Accordingly, we agree with the State that the trial court erred in denying the State's motion to grant use immunity based upon any potential *Bruton* and *Crawford* issues.

Having found that the trial court had no discretion to deny the State's motion once it determined the motion met the requirements of the statute, we next consider defendants' argument in support of the appellate court's decision. On appeal, defendants do not address the mandatory-permissive issue but, instead, argue that the trial court properly denied the State's motion because that motion was not in a procedurally proper form. Defendants contend that the motion failed to set forth any terms, parameters, scope, agreement or specifics of the proposed immunized testimony, and set forth no specifics concerning the testimony it intended to elicit from Jackson. Because the motion was not in procedurally proper form, the trial court properly denied that motion.

In reply, the State argues that its motion was in procedurally proper form, as there is no requirement in the statute that the State set forth or detail the proposed testimony in its motion.

We agree with the State. The use immunity statute provides that if a witness has refused or is likely to refuse to produce evidence on the basis of his privilege against self-incrimination, the State can file a motion that the witness be granted immunity from prosecution in a criminal case as to any information directly or indirectly derived from the production of evidence from the witness. The use immunity statute contains no requirement that the State detail the testimony it intends to elicit from its witness.

Here, the State's motion stated that Jackson, as an indicted codefendant, had a fifth amendment right not to testify against defendants. The State therefore requested that Jackson be granted immunity from prosecution as to any information derived directly or indirectly from the production of evidence from Jackson while he testifies against defendants. Consequently, the State's motion

was procedurally and substantively proper, so that the trial court had no basis to deny that motion.

Defendants then argue that the trial court properly considered the constitutional issues because defendants' response to the State's motion "constituted the functional equivalent of a timely motion *in limine.*" Defendants' theory is that because their response was really a motion *in limine*, the State should have set forth an offer of proof concerning the substance of Jackson's immunized testimony, and should have indicated whether the State could vouch for Jackson's veracity if he did testify. Because the State failed to set forth such an offer of proof, the trial court properly exercised its discretion and "rendered a sound, pre-trial evidentiary ruling."

As argued by the State in reply, there is no merit to this argument. Defendants did not file a motion *in limine*, and there was no hearing concerning a motion *in limine.* "A motion *in limine* is a pretrial motion that seeks an order excluding inadmissible evidence and prohibiting questions concerning such evidence, without the necessity of having the questions asked and objections thereto made in front of the jury." *People v. Williams*, 188 Ill. 2d 365, 368 (1999). The document filed by defendants in response to the State's motion was titled, "Response to People's 'Use Immunity' Related Motion." The hearing at issue was limited to the State's motion for use immunity. Accordingly, because the motion before the trial court was the State's motion to grant use immunity, the State was not required to make an offer of proof concerning Jackson's testimony in order to prevail on its motion.

Finally, echoing the trial court's concerns, defendants contend that Jackson did not meet the definition of a witness as contemplated by the use immunity statute, so that the State's motion was properly denied. Defendants contend that Jackson was not a material witness, but rather was a defendant. The gravamen of defendants' argument is that a defendant cannot be a witness under

the use immunity statute, even when his trial has been severed from that of his codefendants.

We first note that although defendants refer to a "material witness," the use immunity statute simply uses the term "witness." In contrast, the transactional immunity statute uses the term "material witness." Black's Law Dictionary defines "witness" as:

> "[o]ne who gives testimony under oath or affirmation (1) in person, (2) by oral or written deposition, or (3) by affidavit." Black's Law Dictionary 1740 (9th ed. 2009).

If Jackson testifies in defendants' case pursuant to use immunity, he is giving testimony under oath or affirmation and therefore fits the definition of a "witness."

In any event, defendants' attempt to distinguish a codefendant from a witness cannot stand. As the United States Supreme Court recognized, in addressing the federal use immunity statute:

> "The existence of these [immunity] statutes reflects the importance of testimony, and the fact that many offenses are of such a character that *the only persons capable of giving useful testimony are those implicated in the crime.* Indeed, their origins were in the context of such offenses, and their primary use has been to investigate such offenses." (Emphasis added.) *Kastigar v. United States*, 406 U.S. 441, 446-47, 32 L. Ed. 2d 212, 218, 92 S. Ct. 1653, 1657 (1972).

Consequently, the fact that Jackson was a codefendant of defendants does not prohibit the State from granting Jackson use immunity to testify as a witness in defendants' case.

The trial court, therefore, was obligated to grant the State's motion to grant Jackson use immunity in this case. The appellate court erred in affirming the trial court's denial of that motion.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court, affirming the trial court's denial

of the State's motion to grant use immunity to Tyrese Jackson, and reverse the judgment of the trial court. The cause is remanded to the trial court for further proceedings consistent with this opinion.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*cause remanded.*