2026 IL App (1st) 240131-U

Fourth Division
Filed April 30, 2026

No. 1-24-0131

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> EDGAR TORRES, <br><br> Defendant-Appellant. | Appeal from the <br> Circuit Court of Cook County <br><br> No. 95 CR 1889403 <br><br> The Honorable Nicholas Kantas, <br> Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Navarro and Justice Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Dismissal of defendant's postconviction actual-innocence claim was reversed, and the cause remanded for an evidentiary hearing, where defendant presented new affidavits from two codefendants that, if believed, would exonerate defendant.

¶ 2    On May 27, 1995, a fight broke out on tier A4 of the Cook County Jail between rival gang alliances. During the chaos, two inmates were stabbed, one fatally. Six men, all members of the Folk Nation, were charged with murdering the deceased inmate, a People Nation member named Vincent Cox. Five of the defendants were acquitted. The sixth, Edgar Torres, was found guilty. Now, two of those acquitted codefendants have sworn out affidavits that, if believed, exonerate Torres. The question before us is whether Torres is entitled to an evidentiary hearing on his claim

that those affidavits amount to new evidence of actual innocence that would, as a matter of due process, require a new trial. We find that he is, so we reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4        In 1995, Torres and five codefendants—Reginald Guice, Demetrius Green, Marvin Hicks, Robert Munoz, and Duane Calhoun—were charged with the first-degree murder of Cox.

¶ 5                                         A. Trial

¶ 6        The case proceeded to a bench trial that was held across four days in December 1997 and June and July 1998.

¶ 7        The evidence at trial showed that, on May 27, 1995, the defendants and the victim were inmates housed on tier A4 of the now-demolished Division 1 of the Cook County jail. All six defendants were members of gangs affiliated with the Folk Nation alliance. Cox and several other inmates on the tier were members of gangs affiliated with the rival People Nation. Around 7:30 p.m., some kind of disturbance broke out on tier A3, directly below tier A4. The inmates on tier A4 heard the disturbance, provoking a commotion that quickly devolved into a melee. The corrections officer watching over the tier heard someone yell, "Folks against the People," and inmates started fighting with each other, some of them using shanks. A group of People-affiliated inmates, who were outnumbered, retreated to cell number 4-5 for safety, including inmate Corey Bush, who was bleeding profusely from multiple stab wounds. The inmates in cell 4-5 yelled for help. Officers responding to the fight flooded the tier and extracted Bush and the others in cell 4-5. Once the situation was back under control, officers did a cell-by-cell search and found Cox lying dead or dying—it is not clear which from the testimony—in a pool of blood in his cell. He had been stabbed several times.

¶ 8        Three inmates testified at trial: Angel Pagan, a member of the Folk-affiliated Spanish Cobras, and Edgar Hill and Deangelo Horton, members of the People-affiliated Vice Lords.

¶ 9        Pagan testified that he and Torres were cellmates on the day of the fight. That evening, he said, he was reading in his cell when the disturbance started. When he heard someone scream, he

looked out into the hallway. He saw Torres and Calhoun chasing Cox into his cell, number 18. Torres was holding a shank. He also saw Guice and Hicks chasing Bush while hitting and stabbing him. Pagan heard screaming coming from Cox's cell. After a couple minutes, Torres and Calhoun emerged from Cox's cell covered in blood. Torres ran back to his and Pagan's cell, where he ripped up his bloody clothing and flushed it down the toilet, washed the blood off of his hands, and threw the shank into an air vent.

¶ 10    At trial, Pagan admitted that he had not consistently told the same story about the fight. During the initial investigation, he claimed not to know anything. Like every other inmate on the tier, Pagan was issued a citation for fighting with a shank. (The officer who issued the citation admitted at trial that he had not seen Pagan doing that but his superiors had ordered him to write up everyone on the tier.) He was sent to administrative segregation based on the citation. But then, ten days after the fight, Pagan signed a handwritten statement implicating Torres and the others, and he testified before a grand jury a week later. He was eventually transferred to protective custody in Division 10. Later that year, however, Pagan sent a letter to Torres's attorney disavowing his signed statement and claiming that he had been coerced into giving it. At trial, he testified that he sent the letter because Torres had also left segregation and had threatened him with harm if he did not recant. He acknowledged that, when he actually spoke to Torres's defense team, he had denied being threatened into recanting.

¶ 11    The State also called Hill and Horton, but both of them either denied seeing or remembering anything pertinent, so the State introduced typewritten statements that each one had signed as substantive evidence. According to their statements, when the incident started, Hill and his cellmate, Eddie Larry, were in their cell, number 4-5, along with Horton and another inmate that neither statement identified by name. They saw Bush being attacked and stabbed by other inmates. Bush made it to cell 4-5, whose occupants pulled him to safety before barricading themselves in. After Bush joined them, Hill and Horton both saw a group of Folks attack Cox. According to Hill, the assailants included Torres, Guice, Hicks, Munoz, Green, and several others. Torres, Guice, Hicks, and Munoz had knives and were stabbing Cox; Green was beating him with a broom handle.

After leaving Cox's cell, the group—still armed—tried to get into cell 4-5 until correctional officers arrived. In Horton's telling, Torres, Guice, Hicks, and Munoz, all of whom were armed with knives, pushed Cox into his cell, where Hicks started stabbing Cox. After leaving Cox's cell, the same four men walked past cell 4-5 with blood on their clothes.

¶ 12     At the close of the State's case, all six defendants moved for acquittals. Noting that Pagan had affirmatively identified both Torres and Calhoun as members of the group that killed Cox, the court denied their motions for directed verdicts. As for the other defendants, the court observed that the only evidence implicating them in Cox's murder were the prior unsworn statements of Hill and Horton and there was no testimony that had been given under oath that any of them were involved in the killing. It therefore found Guice, Green, Hicks, and Munoz not guilty.

¶ 13     The two remaining defendants proceeded by stipulation. The lone stipulation offered by Torres was that, when interviewed by the defense on June 8, 1998 (the date he testified), Pagan did not tell them that Torres had threatened him or his family if he did not give exculpatory testimony at trial.

¶ 14     After hearing closing arguments, the trial court entered its findings. It began by acquitting Calhoun. It explained that, while Pagan had testified that Calhoun was one of the men who attacked Cox, neither Hill's nor Horton's statements had identified him as a member of that group, leaving a reasonable doubt as to Calhoun's guilt. Torres, by contrast, was named by all three eyewitnesses as a participant in the killing. For that reason, the court was convinced beyond a reasonable doubt that Torres was, at minimum, accountable for Cox's death. It therefore found him guilty.

¶ 15     At sentencing, the court found Torres eligible for the death penalty, but it found that the uncertainty over whether he actually inflicted a fatal wound was sufficiently mitigating to preclude capital punishment. Instead, it sentenced him to 60 years' imprisonment to be served consecutively to an existing 30-year sentence for home invasion and armed robbery.

¶ 16                              B. Direct Appeal & Habeas

¶ 17        On direct appeal, Torres challenged the sufficiency of the evidence to sustain his conviction, contended that the trial court erred by denying pretrial suppression motions, and argued that his sentence was excessive. We rejected all three arguments and affirmed. See *People v. Torres*, 324 Ill. App. 3d 1138 (2001) (table) (unpublished order under Illinois Supreme Court Rule 23). He then sought *habeas corpus* relief in federal court, but his petition was denied. See *United States ex rel. Torres v. Briley*, No. 03 C 0522, 2004 WL 1254133 (N.D. Ill. 2004).

¶ 18                         C. 2004 Postconviction Proceedings

¶ 19        After Torres's *habeas* petition was denied, he filed a *pro se* postconviction petition that included a freestanding claim of actual innocence which he supported with a then-unnotarized affidavit authored by Angelo Evans. According to the affidavit, Evans was a People-aligned inmate on tier A4 on the date of the murder. When the fight broke out, he fled to the shower room, where he encountered Torres, who was getting dressed. He told Torres that he wanted nothing to do with what was going on. When another inmate arrived with a knife, Torres interposed himself bodily to protect Evans and told the would-be attacker that Evans had nothing to do with what was happening, and the knife-wielding inmate left. Torres then escorted Evans to cell 4-5, shielding him from harm along the way. After Evans was safely inside the cell, Torres stayed in front of the door and tried to defuse the situation by saying that what happened in tier A3 had nothing to do with tier A4. Beyond saying that he felt guilty for not being able to help Torres at trial, Evans's statement did not explain why he had not come forward sooner. In the *pro se* petition, Torres suggested that Evans was afraid of retaliation from his own gang if he helped a member of a rival.

¶ 20        The court appointed counsel, who filed a supplemental petition on Torres's behalf. Attached to the supplemental petition was a notarized copy of Evans's affidavit and an affidavit from Torres stating that the original, unnotarized affidavit had been received about two months before Torres filed his *pro se* petition.

¶ 21        Counsel also supported the actual-innocence claim with a new affidavit from Luis Sosa, a member of the Spanish Cobras and a longtime associate of Angel Pagan. According to Sosa's

affidavit, in the summer of 1997, Pagan told him that he felt bad because he had lied to the grand jury about what he had seen during the fight and anticipated lying again at Torres's trial. Pagan explained that he had been forced to testify falsely against Torres to avoid being charged himself. Pagan also said that he felt lucky to have avoided a charge because an officer had seem him with a shank during the fight and written him a ticket for it. Sosa averred that he encountered Torres in prison in 2005 and, after telling Torres what Pagan had said, agreed to make a sworn statement.

¶ 22    The court dismissed the petition on the State's motion, finding that Evans's affidavit was not newly discovered evidence because Torres would have been aware that Evans was a witness at the time of trial. The court did not specifically address Sosa's affidavit.

¶ 23    Torres appealed, and we affirmed. *People v. Torres*, 384 Ill. App. 3d 1090 (2008) (table) (unpublished order under Illinois Supreme Court Rule 23).[1] We found that Evans's affidavit was unnotarized and, therefore, "a nullity, and insufficient to support defendant's claim of actual innocence." *Torres*, slip order at 7. We also agreed with the circuit court that Sosa's affidavit was cumulative to Pagan's impeachment at trial. *Id.* at 7-8.

¶ 24                         D. 2014 Postconviction Proceedings

¶ 25    In 2014, Torres sought leave to file a successive postconviction petition raising a new actual-innocence claim based on an affidavit sworn out by acquitted codefendant Reginald Guice. According to Guice's affidavit, the inmates in tier A4 became aware that a riot had broken on tier A3, one floor below. Guice was upset because, on tier A3, Folk-aligned inmates were outnumbered by People-aligned inmates, who were taking advantage of their numerical superiority. The situation in tier A4 was reversed, so Guice decided to take revenge on the People-aligned inmates for what was happening below. He found and chased Angelo Evans into the shower room, meaning to stab him. Evans hid behind Torres. When Guice told Torres to move, Torres refused. Guice considered this a betrayal, and he was contemplating stabbing Torres when he heard someone calling his name.

---

[1]    Our decision is not in the record, but we take judicial notice of it. See *People v. Brown*, 2023 IL App (2d) 220334, ¶ 26 n.2.

He returned to the cells, spotted Vincent Cox looking out of his cell door, and attacked him, stabbing him repeatedly as Cox retreated to the back of his cell. Others joined in and also stabbed Cox, but Torres was not one of them. When Guice left Cox's cell, he saw Torres in front of cell 4-5, where the People-aligned inmates had taken refuge. He started toward Torres intending to stab him for aiding their enemy, but guards began pouring into the tier, so Guice found a place to ditch his shank. Guice explained that he had not come forward after his own acquittal because he felt that Torres had gotten what he deserved for his "ultimate betrayal." He only chose to speak up because he had realized that two wrongs did not make a right and he wanted to clear his conscience.

¶ 26    The court granted Torres leave to file his petition and appointed counsel, who did not file an amended petition but did supplement the *pro se* petition with the affidavit of another acquitted codefendant, Demetrius Green. Green's affidavit stated that, when the fight broke out, he found himself locked in his cell, from which he watched everything that transpired. According to Green, Torres never went into Cox's cell and, in fact, tried to stop the melee by protecting members of the Vice Lords and Black Stones, both People-aligned gangs, from being stabbed. Green did not specifically say why he had not come forward sooner, but he did aver that he had "recently heard" that Torres was still in prison for the killing.

¶ 27    The State moved to dismiss. The circuit court granted the motion, finding that the court had previously adjudicated Evans's and Sosa's affidavits and that Torres had not established that Guice's and Green's affidavits were newly discovered, noncumulative, or conclusive.

¶ 28                            II. ANALYSIS

¶ 29    A motion to dismiss a postconviction petition tests the legal sufficiency of the petition. *People v. Domagala*, 2013 IL 113688, ¶ 35. The question is whether the allegations, if proven at an evidentiary hearing, would entitle the defendant to relief. *Id.* In making that determination, the petition's well-pleaded allegations and supporting affidavits are taken as true as long as they are not rebutted by the record. *People v. Robinson*, 2020 IL 123849, ¶ 45. As this is a question of law, review is *de novo*. *People v. Moore*, 2023 IL App (1st) 220919, ¶ 22.

¶ 30     Torres's petition raises only one claim, which is that there is newly discovered evidence showing that he is actually innocent of the crime he was convicted for. See *People v. Washington*, 171 Ill. 2d 475, 489 (1996) (holding that such actual-innocence claims are cognizable in postconviction proceedings as a matter of due process under Illinois law). To succeed on this kind of a claim, the defendant must show that the evidence in question is (1) new, (2) material, (3) noncumulative, and (4) conclusive enough that it would probably change the result on retrial. *People v. Coleman*, 2013 IL 113307, ¶ 96. The parties agree that Guice's and Green's affidavits are material evidence that is not cumulative of evidence admitted at trial, but they dispute whether their proposed testimony is truly "new" and whether it would be sufficiently conclusive to probably result in acquittal.

¶ 31     We start by determining whether Guice's and Green's affidavits are newly discovered for the purpose of an actual-innocence claim. "Newly discovered evidence is evidence that was unavailable at trial and could not have been discovered sooner through due diligence." *People v. Harris*, 206 Ill. 2d 293, 301 (2002). Generally speaking, when the source of the evidence is a codefendant, it qualifies as newly discovered because the codefendant had a fifth amendment right to avoid self-incrimination that no amount of diligence could have forced him to waive. *People v. Edwards*, 2012 IL 111711, ¶ 38. Here, both Guice and Green were Torres's codefendants, so Torres argues that their affidavits are newly discovered.

¶ 32     The State does not dispute that Guice and Green were not available to testify when trial started, but it argues that they became available when the trial court entered directed acquittals at the close of the State's case. But as Torres points out, their acquittals on the charge of murdering Cox did not render them immune from liability for either the uncharged stabbing of Bush or their alleged possession of shanks in the jail. Even after their acquittals, each would have had "reasonable cause to believe he might subject himself to prosecution" for those offenses by answering, which would have allowed them to invoke the privilege. *People v. Ousley*, 235 Ill. 2d 299, 306 (2009). Hence, they remained unavailable to testify despite their acquittals.

¶ 33     The State also advances the proposition that, even if Guice and Green were not available at trial, their affidavits are not new evidence because they disclosed facts that were known to Torres at the time of trial. See *People v. Snow*, 2012 IL App (4th) 110415, ¶ 21; *People v. English*, 403 Ill. App. 3d 121, 133 (2010); *People v. Jones*, 399 Ill. App. 3d 341, 364 (2010); *People v. Collier*, 387 Ill. App. 3d 630, 637 (2008). This proposition is not good law. "[O]ur supreme court has found that an affidavit is still newly discovered, even when the defendant knew of the witness earlier and knew what facts the witness could testify to, if no amount of due diligence could have forced that witness to come forward and swear to those facts earlier." *People v. Anderson*, 2021 IL App (1st) 200040, ¶ 59 (citing *Edwards*, 2012 IL 111711, ¶ 38); *accord People v. Mendoza*, 2024 IL App (1st) 231588, ¶¶ 46-47, *People v. Rosalez*, 2021 IL App (2d) 200086, ¶¶ 97-105; *People v. Fields*, 2020 IL App (1st) 151735, ¶ 48.

¶ 34     We agree with Torres that his codefendants, Guice and Green, were not available to testify at his trial and no amount of diligence could have forced them to. See *Edwards*, 2012 IL 111711, ¶ 38. Their unavailability at trial is sufficient to satisfy the requirement for newly discovered evidence regardless of whether their affidavits could have been obtained and put forward in a previous postconviction proceeding. *People v. Harris*, 2024 IL 129753, ¶¶ 60-61. Consequently, Torres has made a substantial showing that their affidavits are newly discovered. Furthermore, because Guice's and Green's affidavits were not presented in a previous proceeding, Torres's claim is not barred by *res judicata* principles. *Id.* ¶ 61 (citing *People v. Ortiz*, 235 Ill. 2d 319, 333-34 (2009)). "A [d]efendant is not precluded from raising multiple claims of actual innocence where each claim is supported by newly discovered evidence." *Ortiz*, 235 Ill. 2d at 333.

¶ 35     Next, we analyze whether Guice and Green's affidavits are of a sufficiently conclusive character so as to probably result in an acquittal. Evidence is sufficiently conclusive if, "when considered along with the trial evidence," introducing it at a new trial "would probably lead to a different result." *Coleman*, 2013 IL 113307, ¶ 96. The evidence does not need to be "entirely dispositive" to merit a new trial. *Robinson*, 2020 IL 123849, ¶ 48. It only needs to place the evidence that was presented at trial "in a different light" so as to undercut the court's confidence

in the verdict at trial. *Coleman*, 2013 IL 113307, ¶ 97. The question is whether it is more likely than not that no reasonable juror would find [the defendant] guilty beyond a reasonable doubt" in light of the new evidence. *People v. Sanders*, 2016 IL 118123, ¶ 47. Because this case is before us on appeal from a second-stage dismissal, we assume that the trier of fact would believe Guice's and Green's testimony at a hypothetical retrial. *People v. McCoy*, 2023 IL App (1st) 220148, ¶ 14 (citing *People v. Wilson*, 2022 IL App (1st) 192048, ¶ 75).

¶ 36   Taking the affidavits as true, we find that they would place the trial evidence in a different light and undermine confidence in the guilty verdict. Guice's affidavit in particular establishes that he and other unnamed detainees stabbed and killed Cox, not Torres. See *id.* (finding that, if the jury believed codefendant's testimony that defendant was not involved in the charged murder, "it is hard to believe that the jury would still convict the defendant based solely on the contrary identifications" of other witnesses). Guice's and Green's affidavits also establish that, during the riot, Torres was actually trying to prevent People-affiliated detainees from being stabbed, contradicting Angel Pagan's trial testimony that he saw Torres run into Cox's cell and emerge shortly thereafter covered in blood and Hill's and Horton's stationhouse statements asserting that Torres was a member of the group that fatally attacked Cox. At this stage, where we are concerned with the sufficiency of the petition, it would not be appropriate for us to determine whether Guice's and Green's accounts are more or less credible than those of Pagan, Hill, and Horton. See *Rosalez*, 2021 IL App (2d) 200086, ¶ 143. Instead, credibility determinations are meant to be made at a third-stage evidentiary hearing. *Id.* ¶ 141 (citing *People v. Harper*, 2013 IL App (1st) 102181, ¶ 44).

¶ 37                              III.  CONCLUSION

¶ 38   Taken as true, Torres's successive petition and its supporting materials make a legally sufficient showing that he is entitled to a new trial as a matter of due process based on the availability of new evidence of actual innocence. The motion to dismiss should have been denied.

¶ 39   Accordingly, the judgment is reversed, and the cause is remanded for the State to file its answer and for the court to conduct a hearing on the petition. See 725 ILCS 5/122-5, 122-6 (West 2024).

¶ 40   Reversed and remanded with directions.