NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200443-U

NO. 4-20-0443

IN THE APPELLATE COURT

FILED
February 24, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Ford County |
| RODOLFO A. CERRITOS, | ) | No. 14CF6 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Paul G. Lawrence, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, finding (1) the trial court did not err in denying defendant postconviction relief following an evidentiary hearing, (2) defendant was not denied the effective assistance of his trial counsel, and (3) defendant received reasonable assistance of postconviction counsel.

¶ 2   In December 2019, defendant, Rodolfo A. Cerritos, filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), alleging ineffective assistance of his trial counsel. In May 2020, defendant, through his appointed counsel, filed an amended postconviction petition, and in June 2020, the State filed a motion to dismiss. In September 2020, the trial court held an evidentiary hearing on the matter and denied defendant's amended postconviction petition.

¶ 3        Defendant appeals, arguing the trial court erred by denying his claims of ineffective assistance of counsel based on trial counsel's failure, at sentencing, to object to Special Agent Andrew Huckstadt's testimony and present mitigating evidence. Defendant further argues he was denied the reasonable assistance of his postconviction counsel due to counsel's failure to amend his *pro se* postconviction petition to adequately present his constitutional claims. We affirm.

¶ 4                                I. BACKGROUND

¶ 5                A. The State's Charges and Defendant's Guilty Plea

¶ 6        In January 2014, the State charged defendant by information with two counts of armed robbery (counts I and IV) (720 ILCS 5/18-2(a)(1), (a)(2) (West 2012)), two counts of kidnapping (counts II and V) (720 ILCS 5/10-1(a)(1), (a)(2) (West 2012)), and one count of aggravated battery (count III) (720 ILCS 5/12-3.05(f)(1) (West 2012)).

¶ 7        In October 2014, defendant entered an open plea to one count of armed robbery (count I) and one count of kidnapping (count II). The State agreed to dismiss the remaining charges. Defendant indicated no one threatened or forced him to plead guilty and he understood the rights he was giving up by pleading guilty. In its factual basis, the State said the evidence would show defendant knowingly and secretly confined J. Hastings against his will and, while armed with a dangerous weapon, *i.e.*, a baseball bat, he knowingly took by force Hastings's property, including $300 in United States currency, a cell phone, profit-sharing checks, and two credit cards. The trial court found defendant's guilty pleas knowing and voluntary.

¶ 8                                B. Sentencing

¶ 9        At the December 2014 sentencing hearing, the State presented the testimony of Paxton police officer Chad Johnson. Johnson testified he received a phone call from Hastings on

December 9, 2013, at approximately 8:40 p.m. Hastings stated he had been kidnapped. Johnson went to Hastings's house and found him "a little bit hysterical and kind of in a panic mode." Hastings stated he was leaving work when he opened his car door and found a man in his backseat. Hastings backed up, and a male came up from behind him. The subjects forced him into the car, zip-tied his hands, and drove him around Ford and Iroquois Counties. Hastings was struck with a baseball bat and a gun. The individuals took cash, checks, credit cards, and his cell phone, and they threatened his family. Hastings stated the men made calls to an individual they called "Boss" and asked if they should kill Hastings. They then made comments to him about getting $50,000 in cash or cocaine in the same amount. The subjects eventually released him. Thereafter, Hastings's family was taken into protective custody.

¶ 10 Special Agent Andrew Huckstadt of the Federal Bureau of Investigation (FBI) testified the subjects arranged a time for Hastings to drop $50,000 at an agreed-upon location. On January 15, 2014, a controlled money drop took place, and defendant arrived to retrieve the money. Following his arrest, defendant indicated he and/or other men attempted to kidnap Hastings three times prior to their successful kidnapping. In July 2013, three individuals, not including defendant, attempted to abduct Hastings at his house, but they "got spooked by his dogs and decided that they should wait on doing it another time." In November 2013, individuals attempted to abduct Hastings at his place of employment but did not because of others outside the business. On December 9, 2013, the day of the actual abduction, defendant and codefendant Marcos were dropped off by codefendant Samano near Hastings's house, but they decided to wait to execute the abduction because they believed a neighbor had seen them. Defendant told Huckstadt the individuals conducted surveillance of Hastings's house and workplace and obtained an internet video to determine what he looked like.

¶ 11 The State asked the trial court to sentence defendant to 22 years in prison. Defense counsel asked for a six-year sentence, arguing as factors in mitigation, *inter alia*, defendant's work history, his "substantially law[-]abiding life," hardship to his dependents, his cooperation with law enforcement, his remorse, and the support from his family.

¶ 12 Before pronouncing sentence, the trial court said it considered the presentence investigation report, the evidence in aggravation and mitigation, and multiple victim impact statements. The court stated defendant was 26 years old, "still a relatively young man" but "old enough to be able to conform his conduct to the requirements of the law." He also had a one-year-old child, had a good employment history, and good support from his family and church. The court further noted defendant showed "appropriate remorse, and *** admitted his involvement as [defense counsel] indicated on three different occasions in speaking with the police and the FBI." However, as aggravating factors, the court found defendant caused "serious harm" to Hastings and "minimized his role" in the offenses. Regarding defendant's criminal history, the court considered defendant's prior felony conviction for cannabis possession, along with convictions for driving under the influence and driving on a suspended license.

¶ 13 Noting the need "to deter others from taking part in such foolish and [nonsensical] activity," the trial court sentenced defendant to 25 years in prison on count I and a concurrent term of 5 years on count II. In doing so, the court considered the "very obvious" impact on Hastings's family and determined "a sentence [was] necessary to deter others, whether it was a planned crime or just a spur of the moment crime."

¶ 13 C. Relevant Posttrial Motions and Direct Appeal

¶ 14 In June 2015, defendant filed a *pro se* motion to withdraw his guilty plea and to vacate the sentence, contending he "had inadequate representation of counsel." The trial court

- 4 -

held a *Krankel* hearing based on defendant's motion in July 2015. See *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). Defendant told the court he "did everything [counsel] wanted," yet counsel never responded to his letters, did not provide him with discovery materials, and did not talk to him at the jail after he was sentenced. Defendant indicated his family "tried calling [counsel] and left messages. And in addition, my mom said she sent some letters for him. So he could use them." However, defendant was uncertain if counsel received the letters "[b]ecause [defendant's] mom never got ahold of him and never found anything about it."

¶ 15        Defendant's trial counsel, Assistant Public Defender David Rumley, testified he made "several visits to the jail." As to the unreceived letters, Rumley said defendant's "wishes were communicated to [him] in open Court at the time of the sentencing." Rumley also indicated he "received no letters from members of [defendant's] family," and he received "no phone messages from anyone on [defendant's] behalf." The trial court denied defendant's motion to withdraw his guilty plea. Thereafter, defendant appealed, and this court remanded the cause for strict compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). *People v. Cerritos*, 2017 IL App (4th) 150553-U, ¶ 3.

¶ 16        On October 5, 2018, defendant filed an amended motion to withdraw his guilty plea and vacate the sentence, alleging he "[h]ad inadequate representation of counsil [*sic*]." The State subsequently filed a motion to dismiss, contesting defendant's assertions. On October 25, 2018, the trial court held a hearing on defendant's motion, and defendant claimed trial counsel never discussed mitigation evidence with him. Defendant also stated he was unaware he could present character witnesses on his behalf at sentencing, but he "provided some after the fact." Rumley told the court he spoke with defendant prior to sentencing and informed him of his right to present mitigating evidence. Ultimately, the court found defendant's guilty plea "was knowing

and voluntary," and the court denied defendant's amended motion. On direct appeal, this court affirmed defendant's conviction and sentence. See *People v. Cerritos*, 2019 IL App (4th) 190030-U, ¶ 3.

¶ 17                              D. Postconviction Proceedings

¶ 18          In December 2019, defendant filed a *pro se* postconviction petition pursuant to the Act (725 ILCS 5/122-1 *et seq.* (West 2018)), alleging ineffective assistance of his trial counsel. Defendant alleged, *inter alia*, Rumley provided ineffective assistance for failing to "file motion to suppress confession where the law provided an avenue such as the immunity agreement written by [defense counsel] himself," and for failing to "object to the joint sentencing hearing where the hearing would not be fair to defendant as he had an immunity agreement with the State and his co-defendant did not." The petition further alleged Rumley failed to "inform defendant about what mitigation evidence was thus not allowing defendant to show mitigation evidence at [the] sentencing hearing."

¶ 19          In May 2020, defendant, through his appointed counsel, filed an amended postconviction petition alleging he was denied the effective assistance of his trial counsel. The petition alleged, in relevant part, Rumley "failed to object to *** Huckstadt's testimony ***  during the sentencing hearing" because "his testimony was in direct violation of the [immunity] agreement." The petition also alleged Rumley "failed to object to the State's request to conduct a joint sentencing hearing with codefendant." Finally, the amended petition asserted Rumley failed to present "live testimony from the Defendant and the Defendant's family members as well as letters of recommendation" and failed to contact or return phone calls from family members who "attempted to submit said mitigation." In support of this claim, defendant attached affidavits from three potential witnesses.

¶ 20        Rodolfo Leon averred he would have been willing to testify as a character witness at defendant's sentencing hearing. However, Rumley "never reached out to [him] to write any character witness letter on [defendant's] behalf and never reached out to [him] to testify as the father of [defendant] on his sentencing heating [*sic*]." Rosa Alvarado, defendant's mother, averred she "tried to contact Mr. Romley [*sic*] on December 1st of 2014 but didn't get a response." Her affidavit further averred she would have been willing to testify on defendant's behalf and, "[i]f [Rumley] would have called [her], [she] would have sent [defendant] the character letters." Takeisha Johnson, defendant's girlfriend, asserted she was "never contacted by [defendant's] attorney to testify or write a letter on his behalf." Defendant also included his own affidavit attesting Rumley "failed to tell [him] that [he] could provide mitigating evidence at the sentencing hearing. He failed to contact any sources of said mitigating evidence and failed to return calls from [defendant's] family members who attempted to submit said mitigation."

¶ 21        In June 2020, the State filed a motion to dismiss defendant's amended postconviction petition, arguing defendant's claims were procedurally forfeited and otherwise "subject to dismissal under the doctrine of *res judicata*." Following a July 2020 hearing, the trial court granted the State's motion to dismiss "in its entirety except for Paragraphs 8-5A, which relate[d] to the Grant of Use Immunity Agreement."

¶ 22        In September 2020, the trial court held a third-stage evidentiary hearing at which Rumley and defendant each testified. Defendant stated he signed a grant-of-use immunity agreement in February 2014. Before signing the document, defendant testified Rumley discussed the agreement with him. As part of the agreement, defendant understood he was to testify truthfully against any codefendants and, according to defendant, he believed any statements he made to the FBI regarding the details of the offenses would not be used against him. After he

signed the agreement, defendant stated he spoke with Rumley again "about that are they going to be able to use it against [him], and [Rumley] said no." Defendant claimed he spoke to Rumley at the sentencing hearing regarding his having "an immunity agreement and [his] co-defendant did not," and he expressed concern over Huckstadt's testimony, which defendant believed should not have been presented against him. However, Rumley told defendant "the Court, even if he objected, would still have allowed joint sentencing." On cross-examination, defendant admitted he did not testify at any proceeding against his codefendants. When asked if he "remember[ed] Mr. Rumley pointing out to the Judge how cooperative [he] had been in the investigation," defendant answered, "Yes." Defendant also recalled Rumley citing the number of times he met with authorities as a demonstration of his cooperation in mitigation.

¶ 23　　　　Rumley testified he had over 30 years of experience as an attorney and participated in "[d]ozens" of sentencing hearings each year. Rumley stated he drafted a grant-of-use immunity agreement and described its purpose to defendant. Rumley indicated his intention was "to create a circumstance where [defendant] could cooperate and reap the benefit from the cooperation." In drafting the agreement, Rumley did not intend for defendant to rely on it unless it had been implemented. However, he described the agreement as being "in the works all along negotiations." Rumley recalled highlighting defendant's cooperation with authorities at sentencing and stated "it [was] certainly something the Court should consider in mitigation of any sentence." Rumley had no recollection of defendant expressing any concerns regarding joint sentencing, the immunity agreement, or Huckstadt's testimony.

¶ 24　　　　As part of its ruling, the trial court appropriately discussed defendant's burden of proof in a third-stage postconviction evidentiary hearing, as well as the law applicable to a claim of ineffective assistance of counsel. The court first found, "[t]here really isn't a Use Agreement

that is valid here" because "it was never effectuated by the Court. The State never went to me or any other Judge *** to actually have this thing put into effect." The court also considered Rumley's trial strategy "in his closing argument that [authorities] talked to [defendant] three times, and nobody got away." The court noted it was "clear *** the evidence that was presented by Officer Huckstadt was not aggravating to the Court." The court then stated it "disregarded that evidence, and found that it didn't make any difference *** whether it was a premeditated offense or it occurred two seconds before it happened." Further, "even if the Court was able to find that Mr. Rumley's representation did fall below an objective standard of reasonableness, *** it certainly did not prejudice the Defendant." The court "found the offense to be very offensive to the victim and the victim's family. And that is why the Court imposed such a harsh sentence as it did." Ultimately, the court denied defendant's amended postconviction petition, concluding he was not denied the effective assistance of counsel.

¶ 25     This appeal followed.

¶ 26                                   II. ANALYSIS

¶ 27     On appeal, defendant argues the trial court erred by denying his claims of ineffective assistance of counsel based on trial counsel's failure, at sentencing, to object to Special Agent Huckstadt's testimony and present mitigating evidence. Defendant further argues he was denied the reasonable assistance of his postconviction counsel due to counsel's failure to amend his *pro se* postconviction petition to adequately present his constitutional claims.

¶ 28                               A. Standard of Review

¶ 29     The Act provides a remedy for defendants who have suffered a substantial violation of constitutional rights at trial. *People v. Pendleton*, 223 Ill. 2d 458, 471, 861 N.E.2d 999, 1007 (2006). The Act sets forth three stages of proceedings. *Pendleton*, 223 Ill. 2d at

471-72. At the first stage, the trial court independently reviews the defendant's postconviction petition and determines whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020). If it finds the petition is frivolous or patently without merit, the court must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2020). If the court does not dismiss the petition, it proceeds to the second stage, where the court may appoint counsel for an indigent defendant. *Pendleton*, 223 Ill. 2d at 472. Appointed counsel may amend the defendant's petition to ensure the defendant's contentions are adequately presented. *Pendleton*, 223 Ill. 2d at 472. Also, at the second stage, the State may file a motion to dismiss the defendant's petition or file an answer to it. *Pendleton*, 223 Ill. 2d at 472. If the State does not file a motion to dismiss or the court denies such a motion, the petition advances to the third stage, wherein the court holds a hearing at which the defendant may present evidence in support of his or her petition. *Pendleton*, 223 Ill. 2d at 472-73. At a third-stage hearing, "the trial court acts as a fact-finder, making credibility determinations and weighing the evidence. [Citation.] Accordingly, we review the court's decision to deny relief for manifest error." *People v. Reed*, 2020 IL 124940, ¶ 51. "Manifest error is 'clearly evident, plain, and indisputable.' [Citation.] Thus, a decision is manifestly erroneous when the opposite conclusion is clearly evident." *People v. Coleman*, 2013 IL 113307, ¶ 98, 996 N.E.2d 617 (quoting *People v. Morgan*, 212 Ill. 2d 148, 155, 817 N.E.2d 524, 528 (2004)). Reviewing courts apply the manifestly erroneous standard in recognition of "the understanding that the post-conviction trial judge is able to observe and hear the witnesses at the evidentiary hearing and, therefore, occupies a position of advantage in a search for the truth which is infinitely superior to that of a tribunal where the sole guide is the printed record." (Internal quotation marks omitted.) *People v. Coleman*, 183 Ill. 2d 366, 384, 701 N.E.2d 1063, 1073 (1998).

¶ 30                                  B. Ineffective Assistance

¶ 31                          1. *Counsel's Failure to Object to Huckstadt's Testimony*

¶ 32          Defendant first argues the trial court erred by denying his claim of ineffective

assistance of counsel because trial counsel failed to raise an objection to Huckstadt's testimony

based on the use immunity agreement at sentencing.

¶ 33          A defendant's claim of ineffective assistance of counsel is analyzed under the

two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Veach*,

2017 IL 120649, ¶ 29, 89 N.E.3d 366. To prevail, "a defendant must show both that counsel's

performance was deficient and that the deficient performance prejudiced the defendant." *People*

*v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To establish deficient

performance, the defendant must show "counsel's performance 'fell below an objective standard

of reasonableness.' " *People v. Valdez*, 2016 IL 119860, ¶ 14, 67 N.E.3d 233 (quoting

*Strickland*, 466 U.S. at 688). " 'Effective assistance of counsel refers to competent, not perfect

representation.' " *People v. Evans*, 209 Ill. 2d 194, 220, 808 N.E.2d 939, 953 (2004) (quoting

*People v. Stewart*, 104 Ill. 2d 463, 491-92, 473 N.E.2d 1227, 1240 (1984)).

¶ 34          Prejudice is established when a reasonable probability exists, but for counsel's

unprofessional errors, the result of the proceeding would have been different. *Evans*, 209 Ill. 2d

at 219-20 (citing *Strickland*, 466 U.S. at 694). " 'A reasonable probability is a probability

sufficient to undermine confidence in the outcome.' " *People v. Peeples*, 205 Ill. 2d 480, 513,

793 N.E.2d 641, 662 (2002) (quoting *Strickland*, 466 U.S. at 694). "[T]here is a strong

presumption of outcome reliability, so to prevail [on an ineffective assistance claim], a defendant

must show that counsel's conduct 'so undermined the proper functioning of the adversarial

process that the trial cannot be relied on as having produced a just result.' " *People v. Pineda*,

373 Ill. App. 3d 113, 117, 867 N.E.2d 1267, 1272 (2007) (quoting *Strickland*, 466 U.S. at 686).

"Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced." *People v. Patterson*, 2014 IL 115102, ¶ 81, 25 N.E.3d 526. A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18, 939 N.E.2d 310, 319 (2010). "If such a claim can be disposed of because the defendant suffered no prejudice, we need not address whether counsel's performance was deficient." *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 57, 145 N.E.3d 544.

¶ 35         Here, defendant's claim of ineffective assistance of counsel fails because he clearly was not prejudiced by trial counsel's failure to object to Huckstadt's testimony at sentencing. The aggravating evidence against defendant in this case was overwhelming. Despite defendant's efforts to minimize his involvement in the offenses, it is undisputed he participated in the violent kidnapping and armed robbery, which terrorized Hastings and his family. At the time of the guilty plea, defendant stipulated through counsel the State could produce witnesses who would testify, among other things, to the fact defendant armed himself with a baseball bat. Officer Johnson testified he received a phone call from Hastings on December 9, 2013, at approximately 8:40 p.m. Hastings stated he had been kidnapped. Johnson went to Hastings's house and found him "a little bit hysterical and kind of in a panic mode." Hastings stated he was leaving work when he opened his car door and found a man in his backseat. Hastings backed up, and a male came up from behind him. The subjects forced him into the car, zip-tied his hands, and drove him around Ford and Iroquois Counties. Hastings was struck with a baseball bat and a gun. The evidence also indicated, while laughing and calling him names, the abductors placed

the gun against Hastings's head and pulled the trigger. They threatened to cut off one of Hastings's fingers, kill his family, or take his wife and daughters to Mexico. Not only did the assailants take Hastings's money, credit cards, checks, and his cell phone, they also demanded more money and threatened him and his family with violent acts if he did not comply. What is more, defendant continued to participate in the criminal enterprise when, over a month after the offenses were committed, he attempted to retrieve the money from the prearranged location, where he was apprehended. Given the "serious harm" caused by defendant as well as the "very obvious" impact on Hastings's family, the court determined a 25-year sentence was necessary "to deter others from taking part in such foolish and [nonsensical] activity," regardless of "whether it was a planned crime or just a spur of the moment crime."

¶ 36        Furthermore, the trial court was in a much better position "to observe and hear the witnesses at the evidentiary hearing and, therefore, occupie[d] a position of advantage in a search for the truth which is infinitely superior to that of a tribunal where the sole guide is the printed record." (Internal quotation marks omitted.) *Coleman*, 183 Ill. 2d at 384. The court specifically found any failure by trial counsel to raise an objection regarding Huckstadt's testimony "certainly did not prejudice the Defendant." The court "found the offense to be very offensive to the victim and the victim's family. And that is why the Court imposed such a harsh sentence as it did."

¶ 37        Because defendant's claim of ineffective assistance of counsel fails to satisfy the prejudice prong, we reject his claim and need not address whether trial counsel's performance was deficient. *Schnoor*, 2019 IL App (4th) 170571, ¶ 57. Thus, the trial court's denial of defendant's amended postconviction petition was not manifestly erroneous. See *Coleman*, 2013 IL 113307, ¶ 98.

¶ 38                    2. *Counsel's Failure to Present Mitigating Evidence*

¶ 39          Defendant next argues his trial counsel was ineffective for failing to investigate and call mitigation witnesses at his sentencing hearing. This claim was dismissed at the second stage of postconviction proceedings. The State contends defendant's argument is procedurally defaulted and, alternatively, the trial court properly dismissed his claim because defendant failed to make a substantial showing of a constitutional violation.

¶ 40          An action under the Act is a collateral attack on the trial court proceedings—not an appeal from the judgment of conviction. *People v. Tate*, 2012 IL 112214, ¶ 8, 980 N.E.2d 1100. This court reviews a dismissal at the second stage *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31, 47 N.E.3d 237. The scope of a postconviction proceeding is ordinarily limited to constitutional matters involved in the original proceedings that have not been, nor could have been, previously adjudicated. *People v. Blair*, 215 Ill. 2d 427, 447, 831 N.E.2d 604, 617 (2005). Forfeiture applies to any issue that could have been raised on direct appeal but was not. *People v. Ligon*, 239 Ill. 2d 94, 103, 940 N.E.2d 1067, 1073 (2010). We may relax the doctrines of *res judicata* and forfeiture under circumstances where: (1) the facts relating to counsel's alleged ineffectiveness do not appear on the face of the original appellate record, (2) a defendant can establish appellate counsel was ineffective for failing to raise the issue on direct appeal, or (3) fundamental fairness so requires. *People v. Terry*, 2012 IL App (4th) 100205, ¶ 30, 965 N.E.2d 533.

¶ 41          Here, defendant's claim his trial counsel was ineffective for failing to call Leon, Alvarado, and Johnson as witnesses to testify is based entirely upon facts contained in the common law record. "[I]n Illinois, defendants are required to raise ineffective assistance of counsel claims on direct review if apparent on the record." *Veach*, 2017 IL 120649, ¶ 46. Even

though defendant now supports his ineffective-assistance claim with additional witness affidavits which were not part of the record on direct review, this does not mean the underlying claim itself "could not have been raised on direct appeal." *People v. Newbolds*, 364 Ill. App. 3d 672, 677, 847 N.E.2d 614, 619 (2006). The proposed testimony of these potential witnesses recount facts defendant would have necessarily been aware of at the time of his sentencing hearing. As the State points out, defendant, at the July 2015 hearing, told the trial court his family "tried calling [counsel] and left messages. And in addition, [defendant's] mom said she sent some letters for him. So he could use them." At the hearing in October 2018, defendant claimed counsel never discussed mitigation evidence with him and, despite being unaware he could present character witnesses on his behalf at sentencing, defendant "provided some after the fact." Defendant was cognizant throughout the posttrial proceedings and on direct appeal that his father, mother, and girlfriend were potential witnesses who were not called. The claim could have been raised by defendant on direct appeal and as a result has been forfeited. *Petrenko*, 237 Ill. 2d at 499; *People v. Harris*, 224 Ill. 2d 115, 124, 862 N.E.2d 960, 966 (2007).

¶ 42    Assuming, *arguendo*, this issue was not procedurally defaulted, it is without merit because defendant cannot make a substantial showing of a constitutional violation. As stated above, defendant contends his trial counsel was ineffective for failing to investigate witnesses who were willing to testify on his behalf at the time of sentencing. Defendant attached affidavits from Leon, Alvarado, and Johnson to his amended postconviction petition averring counsel never contacted them to testify at defendant's sentencing hearing. Defendant also included his own affidavit attesting counsel "failed to tell [him] that [he] could provide mitigating evidence at the sentencing hearing. He failed to contact any sources of said mitigating evidence and failed to return calls from [defendant's] family members who attempted to submit said mitigation." In his

amended petition, defendant alleged counsel failed to present "live testimony from the Defendant and the Defendant's family members as well as letters of recommendation." "Decisions concerning which witnesses to call at trial and what evidence to present on defendant's behalf ultimately rest with trial counsel." *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 79, 962 N.E.2d 528. Moreover, where a defendant cannot point to "potentially favorable testimony the witnesses might offer," the failure to call such witnesses does not indicate incompetence on the part of counsel. *People v. Williams*, 147 Ill. 2d 173, 245, 588 N.E.2d 983, 1012 (1991). Trial counsel cannot be deemed ineffective for failing to investigate these witnesses because none of the affidavits indicate what the witnesses' testimony would have been or whether they would have been helpful. We have not found any evidence in the record, nor has defendant presented any, to rebut the presumption that the absence of these witnesses' testimony was a matter of trial strategy and a sound decision by defense counsel. Even if it was not, defendant provides no substance to the claimed missing mitigation evidence by which we could weigh it against the overwhelmingly aggravating evidence present. Thus, it does not amount to ineffective assistance of counsel. See *Clendenin*, 238 Ill. 2d at 317-18.

¶ 43                                  C. Reasonable Assistance

¶ 44        Finally, defendant argues he was denied the reasonable assistance of his postconviction counsel due to counsel's failure to amend his *pro se* postconviction petition "to adequately present his constitutional claims based on the immunity agreement and joint sentencing."

¶ 45        The right to counsel in postconviction proceedings is statutory as provided in the Act, not a constitutional right. *People v. Suarez*, 224 Ill. 2d 37, 42, 862 N.E.2d 977, 979 (2007). Further, "a defendant in postconviction proceedings is entitled to only a 'reasonable' level of

assistance, which is less than that afforded by the federal or state constitutions." *Pendleton*, 223

Ill. 2d at 472. "Commensurate with the lower reasonable assistance standard mandated in

postconviction proceedings, Illinois Supreme Court Rule 651 (eff. July 1, 2017) sharply limits

the requisite duties of postconviction counsel." *People v. Custer*, 2019 IL 123339, ¶ 32, 155

N.E.3d 374. Rule 651(c) provides that postconviction counsel file a certificate stating he or she

(1) consulted with the defendant to ascertain his contentions of deprivation of constitutional

right, (2) examined the record of the proceedings at trial, and (3) amended the defendant's *pro se*

petition, if necessary, to ensure defendant's contentions are adequately presented. Ill. S. Ct. R.

651(c) (eff. July 1, 2017).

¶ 46            "Fulfillment of the third obligation under Rule 651(c) does not require

postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If

amendments to a *pro se* postconviction petition would only further a frivolous or patently

nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *People v. Greer*,

212 Ill. 2d 192, 205, 817 N.E.2d 511, 519 (2004). Our supreme court has "repeatedly held that

the purpose of Rule 651(c) is to ensure that counsel shapes the petitioner's claims into proper

legal form and presents those claims to the court." *People v. Perkins*, 229 Ill. 2d 34, 43-44, 890

N.E.2d 398, 403 (2007). Additionally, "[p]ostconviction counsel is not required to comb the

record for issues not raised in the defendant's *pro se* post-conviction petition." (Internal

quotation marks omitted.) *People v. Rials*, 345 Ill. App. 3d 636, 641, 802 N.E.2d 1240, 1245

(2003). A postconviction petitioner is "not entitled to the advocacy of counsel for purposes of

exploration, investigation and formulation of potential claims." *People v. Davis*, 156 Ill. 2d 149,

163, 619 N.E.2d 750, 758 (1993).

¶ 47　　　　　Defendant acknowledges postconviction counsel filed a certificate pursuant to Rule 651(c). "The filing of a facially valid Rule 651(c) certificate creates a rebuttable presumption that counsel acted reasonably and complied with the rule." *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 25, 67 N.E.3d 976. "It is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19, 974 N.E.2d 813. On appeal, we review an attorney's compliance with Rule 651(c) *de novo*. *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 15, 43 N.E.3d 1077.

¶ 48　　　　　We turn first to defendant's assertion postconviction counsel provided unreasonable assistance when she "failed to raise a freestanding due-process claim in the amended petition." Defendant posits, "[b]ecause there has been an intolerable breakdown of 'fairness, integrity, and honor in the operation of the criminal justice system' in this case, [postconviction counsel] should have raised a due-process claim in the amended petition." In *Pendleton*, our supreme court considered whether postconviction counsel was required to amend a *pro se* petition to assert a claim not included in the original petition. There, the defendant filed a *pro se* postconviction petition asserting, among other things, improper evidence was presented at his sentencing hearing and his trial counsel was ineffective for failing to file a motion to withdraw the defendant's guilty plea after the defendant told counsel he wished to withdraw his plea. *Pendleton*, 223 Ill. 2d at 466-67. Postconviction counsel filed an amended petition in which counsel incorporated the allegations in the defendant's *pro se* petition and asserted specific claims regarding evidence presented at the sentencing hearing. *Pendleton*, 223 Ill. 2d at 467. The defendant appealed the dismissal of his petition and argued for the first time (1) the trial court failed to properly admonish him pursuant to Illinois Supreme Court Rule 605(b) (eff. Oct. 1,

2001) and (2) postconviction counsel provided unreasonable assistance for failing to include the admonishment issue in the amended petition. *Pendleton*, 223 Ill. 2d at 469-70. The appellate court found the defendant forfeited the issue because it was not included in his postconviction petition but nevertheless found postconviction counsel ineffective for failing to include the issue in the petition, notwithstanding counsel's filing of a Rule 651(c) certificate. *Pendleton*, 223 Ill. 2d at 470.

¶ 49　　　　Our supreme court reversed the appellate court's decision and found postconviction counsel was not required to raise the admonishment issue because it was not included in the defendant's *pro se* petition. The supreme court further found postconviction counsel did not render deficient assistance in failing to raise the issue because " '[p]ostconviction counsel is only required to investigate and properly present the *petitioner's* claims.' " (Emphasis in original.) *Pendleton*, 223 Ill. 2d at 475 (quoting *Davis*, 156 Ill. 2d at 164). The supreme court observed, "Rule 651(c) only requires postconviction counsel to examine as much of the record 'as is necessary to adequately present and support those constitutional claims raised by the petitioner.' " *Pendleton*, 223 Ill. 2d at 475 (quoting *Davis*, 156 Ill. 2d at 164). The supreme court noted that while postconviction counsel may conduct a broader review of the record and may raise additional issues not included in the petition, "there is no obligation to do so." *Pendleton*, 223 Ill. 2d at 476.

¶ 50　　　　Similarly, in *Rials*, 345 Ill. App. 3d at 643, the defendant raised only sentencing issues in his postconviction petition but claimed on appeal his appellate counsel was ineffective for failing to raise a claim the State did not prove his guilt beyond a reasonable doubt because an expert chemist's testimony lacked the necessary foundation. After finding the claims raised on appeal forfeited because they were not included in the defendant's postconviction petition, the

court rejected the defendant's claim he was denied reasonable assistance of postconviction counsel where counsel did not amend his petition to include the claims the defendant sought to raise on appeal. *Rials*, 345 Ill. App. 3d at 643. The court observed, "[c]ounsel is obligated to amend defendant's *pro se* petition only when necessary to adequately present the claims defendant had already raised in his petition and while counsel may add new claims, he is not required to amend defendant's *pro se* postconviction petition to include new issues." *Rials*, 345 Ill. App. 3d at 641. Therefore, because the claims the defendant sought to raise on appeal were not included in his *pro se* petition, "counsel was not required to review the record to ascertain any potential claim of error not raised in defendant's original petition or to amend the petition to include these claims." *Rials*, 345 Ill. App. 3d at 643.

¶ 51 In this case, although defendant raised numerous claims of ineffective assistance of trial counsel, he did not assert—or even allude to the fact that his "due-process rights had been violated by the course of governmental conduct in relation to the immunity agreement" in his *pro se* petition. See *Davis*, 156 Ill. 2d at 163 (stating a postconviction petitioner is "not entitled to the advocacy of counsel for purposes of exploration, investigation and formulation of potential claims"). Therefore, we find postconviction counsel was not required to amend defendant's petition to assert such a claim and defendant was not denied reasonable assistance by counsel's failure to do so. See *Pendleton*, 223 Ill. 2d at 474-75; *Rials*, 345 Ill. App. 3d at 643.

¶ 52 Defendant next argues postconviction counsel performed unreasonably because her amendment of defendant's joint sentencing complaint "provide[d] no hint to the legal basis for such an objection or to the prejudicial impact of joint sentencing." The gravamen of defendant's complaint is "the immunity agreement made the objectionable portions of SA

Huckstadt's testimony admissible in aggravation against *** co-defendant Marcos but not against [defendant] himself."

¶ 53        Illinois's use immunity statute "provides that if a witness has refused or is likely to refuse to produce evidence on the basis of his privilege against self-incrimination, the State can file a motion that the witness be granted immunity from prosecution in a criminal case as to any information directly or indirectly derived from the production of evidence from the witness." *People v. Ousley*, 235 Ill. 2d 299, 316, 919 N.E.2d 875, 887 (2009); 725 ILCS 5/106-2.5 (West 2020). "The State has 'the exclusive authority to grant use immunity,' and '[t]he trial court's role is limited to examining the motion to determine whether the motion meets the procedural and substantive requirements of the use immunity statute.' " *People v. Figueroa*, 2020 IL App (2d) 160650, ¶ 44, 156 N.E.3d 1133 (quoting *Ousley*, 235 Ill. 2d at 315). Here, any objection to the joint sentencing hearing based on the purported immunity agreement would have been frivolous as the State never filed a motion effectuating the agreement. "Defense counsel is not required to make futile motions or objections in order to provide effective assistance." (Internal quotation marks omitted.) *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 95, 58 N.E.3d 1242 (quoting *People v. Smith*, 2014 IL App (1st) 103436, ¶ 64, 16 N.E.3d 129).

¶ 54        Defendant concedes, "without the agreement, [he] could show neither deficiency nor prejudice from Rumley's failure to object to joint sentencing." But even if it could be said that Rumley's failure to object to joint sentencing was objectively unreasonable, it caused no prejudice. It is evident from the trial court's remarks it was inclined to view the allegedly objectionable portions of Huckstadt's testimony in mitigation. The court concluded it was "clear *** the evidence that was presented by Officer Huckstadt was not aggravating to the Court." In fact, the court expressly stated it "disregarded that evidence, and found that it didn't make any

difference \*\*\* whether it was a premeditated offense or it occurred two seconds before it happened." Thus, there is no reasonable probability, absent Huckstadt's testimony, the outcome would have been different. See *Peeples*, 205 Ill. 2d at 513.

¶ 55 Having found no effective use immunity agreement, defendant could not make a substantial showing of a violation of his constitutional right to the effective assistance of counsel. Consequently, any amendment alleging trial counsel was ineffective for failing to object to joint sentencing based on such an agreement would have been frivolous and thus was unnecessary. See *Greer*, 212 Ill. 2d at 205 (finding where amendments to a *pro se* postconviction petition would only further a frivolous and patently nonmeritorious claim, they are not " 'necessary' " within the meaning of Rule 651(c)). Accordingly, we find defendant was not denied the reasonable assistance of postconviction counsel.

¶ 56        III. CONCLUSION

¶ 57 For the foregoing reasons, we affirm the trial court's judgment.

¶ 58 Affirmed.