NOTICE
Decision filed 04/28/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 230488-U

NO. 5-23-0488

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Saline County. |
| | ) | |
| v. | ) | No. 22-CF-375 |
| | ) | |
| SHANNON Z. HALE, | ) | Honorable |
| | ) | Todd D. Lambert, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Justices Vaughan and McHaney concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm the judgment of the trial court where the defendant was not denied his constitutional right to present a complete defense due to an improper evidentiary ruling.

¶ 2   The defendant, Shannon Z. Hale, was convicted on February 10, 2023, of possession of less than five grams of methamphetamine in violation of section 60(a) of the Methamphetamine Control and Community Protection Act (Act) (720 ILCS 646/60(a) (West 2020)), and delivery of less than five grams of methamphetamine in violation of section 55(a)(1) of the Act (*id.* § 55(a)(1)). On June 20, 2023, he was sentenced to five years' incarceration on his conviction for possession of methamphetamine and a concurrent seven years' incarceration on his conviction for the delivery of methamphetamine, followed by a one-year term of mandatory supervised release. The defendant timely appealed raising the sole issue of whether the trial court violated the

1

defendant's right to present a complete defense when it excluded certain other crime evidence. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                  I. BACKGROUND

¶ 4     On October 26, 2022, the defendant was charged by information with one count of criminal sexual assault of L.C. in violation of section 11-1.20(a)(1) of the Criminal Code of 2012 (720 ILCS 5/11-1.20(a)(1) (West 2020)), and one count of possession of less than five grams of methamphetamine in violation of section 60(a) of the Act (720 ILCS 646/60(a) (West 2020)). At a hearing on November 22, 2022, the defendant moved to proceed *pro se*, which the trial court granted. The trial court later appointed stand-by counsel for the defendant.

¶ 5     An additional charge of the delivery of less than five grams of methamphetamine to L.C. in violation of section 55(a)(1) of the Act (*id*. § 55(a)(1)), was filed on January 4, 2023. The State indicated, at a pretrial hearing conducted on February 2, 2023, that it was proceeding to trial on the drug related offenses only and requested the dismissal of the criminal sexual assault charge. The trial court dismissed the one count of criminal sexual assault and then proceeded to hear motions *in limine*.

¶ 6     The State's second *motion in limine* requested that it be allowed to present, at trial, certain statements made by the defendant at the November 22, 2022, and January 3, 2023, hearings. The State further requested that the entire transcripts of those hearings not be admitted or published since they contained discussions of other crimes, *i.e.*, the criminal sexual assault. Specifically, the State requested that the trial court limit the admission of the hearing transcripts to specific pages and lines set forth in the State's second motion *in limine* that were the admissions and/or statements of the defendant with regard to the methamphetamine-related charges.

¶ 7    The defendant "wholeheartedly" objected. The defendant stated that presenting the evidence piecemeal would undermine his ability to tell the whole story and that it would be very "one-sided" if the State was allowed to proceed in that manner. The defendant acknowledged that reference to other crimes might be prejudicial, but argued that it would be more prejudicial if the State was allowed to "nitpick" the version of events. The defendant further informed the trial court that "I'm willing to take the risk of the prejudicial—it being prejudicial towards me because of a crime they accused me of." Therefore, the defendant requested that the State's second motion *in limine* be denied and that there be no redactions or restrictions on the transcripts.

¶ 8    The trial court ruled as follows:

> "[The defendant], am I going to have to spend all next week protecting you from yourself? Because so far in this hearing, that seems like what I'm going to have to do. I can't imagine a situation where you want testimony concerning a possible criminal sexual assault to be evidence in front of the jury. I can't imagine that. It is prejudicial to you having that information in front of the jury. This is just a case about drugs at this point, and introducing evidence of charges which no longer exist could—particularly, the nature of a criminal sexual assault could inflame the jury and prejudice you in this matter."

The trial court further stated that it would consider any pages or lines that the defendant would present that would complete a thought or put some context to a portion identified by the State, but that it would not allow the entire transcripts because it believed doing so would be prejudicial to the defendant.

¶ 9    The State went on to request that the trial court also limit portions of law enforcement's body camera footage to only those portions containing the defendant's admissions as they relate

3

to the drug offenses. The defendant objected and argued that the entire body camera video should be precluded as prejudicial. Finally, the State made the same argument regarding the video of the defendant's interview with law enforcement and the audio of one jail telephone call made by the defendant. Concerning the interview, the defendant objected stating that "the majority of that interview was in regards to the criminal sexual assault case, and I object to that being admitted to—I think it would be prejudicial to me for the jury to see that." The State responded that the interview would be redacted to only those portions where the defendant made statements regarding the delivery of the methamphetamine.

¶ 10     Although the defendant had already received complete copies, the trial court directed the State to provide those portions of the body camera video, the jail telephone call, and the defendant's interview that the State intended to present to the jury, to the defendant so that he could view them prior to trial. The trial court further directed the State to present the same to the trial court so that it could review and make a ruling on their admission at trial after the State had met the foundational requirements.

¶ 11     At a hearing on February 6, 2023, the defendant objected to several chain of custody documents that reflected evidence concerning the criminal sexual assault charge and the State agreed to redact those documents to reflect only the evidence related to the drug charges. The trial court again stressed that it did not "want any documents that relate to the alleged criminal sexual assault to be shown to or admitted to the jury or even spoken about. So this should be a pretty narrow evidentiary trial relating only to the methamphetamine."

¶ 12     On February 7, 2023, the trial court addressed those portions of the body camera video, the jail telephone call, and the defendant's interview submitted by the State. The defendant acknowledged that he was able to view the clips and objected to the jail telephone call. The

4

defendant asked that an additional 20 seconds of the telephone call be played since later in the telephone call, he stated that he had not provided the methamphetamine, but instead, had provided a cutting agent. The trial court denied the defendant's request, noting that the telephone call was the State's evidence and that the defendant could choose to offer an audio clip that included more than what the State was going to offer.

¶ 13 The defendant also asked the trial court about a section of the transcript that mentioned a sexual favor, as follows:

"It says, okay, so did I also tell you that after she did the line of methamphetamine that I agreed to give her more methamphetamine as payment for soliciting her vagina for solicitation of prostitution. I was basically buying her sexually for two lines. So are we allowed—are we allowed to talk about the sexual favor and her being paid and sex in general with her and just keep out the rape or should the sex—anything mentioning sex or sexual should that be taken out, also?"

¶ 14 The State indicated that the defendant was not charged with solicitation of sex, and that portion of the transcript explained the defendant's reason why he provided L.C. with methamphetamine. The trial court found that portion of the transcript was not prejudicial as it related to the crimes of methamphetamine possession and distribution. The trial court further held, with regard to the audio and videos, as follows:

"Well, of course, I'm going to rule on its admissibility once it's presented, but you know, the Court has listened to the audio and watched the video. I don't find any prejudicial effects of any of those discs to you. They have appropriately taken out the things that could have been prejudicial, which were matters related to the criminal sexual assault. I think the State has done a yeoman's job of trying to

5

protect your rights, [the defendant], in keeping those matters off of the recording. So right now, assuming that they can lay a proper foundation, those are all going to come in."

¶ 15 The State then provided a redacted property inventory record as well as a redacted laboratory report. The trial court inquired if the redactions satisfied the defendant's objection and the defendant stated, "I believe so. It doesn't say anything about criminal sexual assault or anything sexual, so I don't really have no objection to that being admitted at all."

¶ 16 The matter proceeded with a jury trial conducted February 8-10, 2023. During opening statements, the defendant stated he did not give L.C. methamphetamine and instead, had provided her with "MSN,"[1] that the defendant described as "a vitamin" that looks "exactly like methamphetamine." The defendant stated that L.C. had offered a sexual favor, but that he felt like it was a set up since she "left baggies and stuff there to set me up." He admitted that he offered L.C. "two lines of methamphetamine, a generator and a half a gram of methamphetamine" but then only provided her with the MSN. The defendant stated that L.C. "snorted" the MSN, instantly got mad because she knew it was not methamphetamine, and "called law enforcement and told law enforcement a big lie, big old ordeal, right?"

¶ 17 The defendant went on in his opening statement as follows:

"So when I give her the methamphetamine, the cops come. My first reaction is to run up to [Officer] Leverett, run up to the cop and say, hey, hey, you know what I mean, I didn't do what she said I did. I paid for it, you know what I mean?

---

[1]MSN is later referred to at trial as MSM and is also referred to as MSM in the parties' briefs. According to the testimony at trial, MSM is an abbreviation for methylsulfonylmethane, a nutritional supplement. For consistency and to avoid any confusion, we will refer to methylsulfonylmethane as MSN throughout this decision.

And it was easier for me to just say, I gave her methamphetamine. I gave her—I gave her two lines of meth. I didn't do what she said I did to her. Okay?

* * *

All right. Why did I do it? I gave a false confession. It was easier for me to say I gave her meth than to say MSN and go into detail and explain what it was and why I did it and where I got it. So I just said—I just said methamphetamine. I didn't have any methamphetamine that day. It was MSN, and I made a deal for a sexual favor for [L.C.] which included a generator and half gram, along with two lines of MSN.

* * *

I did not relay the information that the two lines I gave her was really MSN because I was locked into a statement that I gave her two lines of meth, and I was scared that if I told law enforcement later that I gave [L.C.] two lines of MSN, I would get in trouble for lying and be charged with obstruction of justice."

¶ 18 The defendant continued his opening statement and at one point, the trial court excused the jury to address an objection by the State regarding the defendant's statements about the evidence. In addressing the objection, the following dialogue occurred:

"THE COURT: Okay. Well, here's the deal. You did make a statement, and it raised my eyebrow when you said it, that the reason that [L.C.] called the police had to do with fake meth. There actually is evidence out there that the reason that she called the police was because of her claim of criminal sexual assault.

THE DEFENDANT: Well, that's the reason why she claimed the sexual assault because I ripped her off.

7

THE COURT: But what I've said before today is that I don't want any evidence of that criminal sexual assault before the Court, before the jury. It does—it's not relevant to the issue of whether you possessed meth or delivered meth. I think it's prejudicial to you if it's brought in. So—but by your statements, you can open that door to things that might not otherwise be admissible or things that might be prejudicial to you, and you're on the verge of doing that with that statement."

¶ 19    The defendant continued to make several statements that the reason L.C. called law enforcement was due to receiving fake methamphetamine, to the point that the State again objected, and the trial court excused the jury. The trial court stated that, "I have tried to protect you from yourself, [the defendant]. You don't need that evidence in this trial, but on three occasions already, you've opened that door. If the State wishes to present that evidence, I'm going to let them."

¶ 20    The State moved to allow the admission of evidence and testimony regarding the reason L.C. had contacted law enforcement. The defendant argued that he had not mentioned the criminal sexual assault and that the trial court "never told me I'd open up the door for that, never told me." The trial court reminded the defendant that he had chosen to represent himself in this matter and that the trial court was not there to advise or provide knowledge to the defendant. The trial court granted the State's motion for leave to present evidence concerning the reason L.C. called law enforcement.

¶ 21    The next day at trial, prior to the entrance of the jury, the State informed the trial court that pursuant to their motion being granted, it intended to have witnesses testify that there was a report of a sexual assault, and who made that report, without going into any details about the actual sexual assault. The defendant responded as follows:

8

"Your Honor, my opinion is honestly—I know you don't think it's in my best interests, she don't think it. I say we open it wide open. Let me say whatever I want to say, let them say whatever they want to say. They can bring up all the rape stuff, let's talk about how I'm a rapist and I could have 20 women get up on there [on] the stand and say I'm not no rapist, never was a rapist. And it's shameful that they brung [*sic*] up the case and had me charged for something I didn't do anyway, seriously.

So without all this, oh, you can't say that, [the defendant], you can't say that, [the defendant], just let them talk about whatever. Let them talk about the rape and whatever else, you know, the hell else they want to bring up and let me do my defense and let me convince these people that I'm innocent of this charge please."

¶ 22    The trial court emphasized that the defendant was on trial for the possession and delivery of methamphetamine and that any evidence presented needed to relate to those charges. The defendant again inquired whether "is there any way you can just take off or they can do some oral motion right now, do an oral motion to say whatever the hell you all want to say and let me say whatever the hell I want to say." The trial court informed the defendant that it was "not how a courtroom worked" and that there were restrictions on certain evidence. The trial court reminded the parties that there was no motion before the court requesting that the criminal sexual assault evidence be kept out and although the trial court may sustain an objection at the time, there is no ruling that prohibited it.

¶ 23    L.C. was the first witness called by the State. She testified that she had been addicted to methamphetamine, had used methamphetamine "a lot," and was familiar with the effects of methamphetamine on her body. L.C. testified that on October 25, 2022, she went to her cousin's house, where the defendant also stayed, and used methamphetamine provided by the defendant.

9

She described the room in which the methamphetamine was used and also the manner in which they had ingested the methamphetamine. L.C. testified that the use of the methamphetamine provided by the defendant resulted in the same effect as previous usages of methamphetamine and at no time did the defendant indicate that the substance was anything other than methamphetamine. L.C. also identified, from photographs, the baggy from which the defendant had retrieved the methamphetamine and the dresser on which the methamphetamine was placed prior to ingestion.

¶ 24     On cross-examination, L.C. acknowledged that she had known the defendant a long time and that he used to date her daughter. L.C. also acknowledged that she had previously "smoked meth" with the defendant, but stated that she came to her cousin's home to get assistance retrieving some items that had been stolen and not for the obtainment of methamphetamine. When the defendant asked the reason why they did not end up going to retrieve the stolen items, L.C. stated "Well, you invited me in and it went from—the reason we didn't do it is you took ahold of me and took me down the hall and you raped me." The following exchange then took place:

"Q. No, I didn't rape you. You know I didn't rape you.

A. Yes, you did.

Q. No, I did not.

THE COURT: Ask a question, [the defendant].

Q. All right, [L.C.]. Look, not one tear.

[THE STATE]: Objection.

THE DEFENDANT: Not one tear.

[THE STATE]: Objection.

THE DEFENDANT: It's fake.

10

THE COURT: [The defendant], ask a question. If you have a question, ask a question."

¶ 25 The defendant went on to ask L.C. about the stolen items, made statements that she was lying, and was cautioned by the trial court that he was being argumentative with the witness. The defendant then stated that it was hard to be nice when his life was on the line. The State objected to the characterization of the punishment and the trial court excused the jury. As the jury was exiting, the defendant again stated, "Not a tear." The trial court admonished the defendant regarding his conduct, and that he would not be allowed to make those types of comments, particularly when the jury was leaving the room. The trial court also reminded the defendant that he could not reference any type of punishment and noted that the defendant was acting erratically. As such, the trial court had the podium moved so that the defendant would not be as close to the jury.

¶ 26 The jury returned and the defendant continued his cross-examination of L.C. She admitted that she was not clean and sober, but stated that there was no methamphetamine in her system at that time. The defendant then became aggressive and argumentative with L.C., and the jury was again excused. The trial court again admonished the defendant on his conduct. Once again, the jury returned and the defendant's cross-examination of L.C. continued.

¶ 27 L.C. testified that the defendant forced her to take the methamphetamine and about her prior conviction for theft and possession of methamphetamine. She also testified that she had found several of her stolen items at the defendant's residence and was upset about it. L.C. further stated that she was aware of individuals that used drugs being at the residence, that drug users are known to lie, and again stated that she knew the substance the defendant had provided was "real meth" because she had done methamphetamine before and knew how the drug made her feel.

11

¶ 28    Prior to reexamination by the State, the jury was excused and the State requested that it be allowed to ask L.C. regarding her statements that she was forced to consume the methamphetamine and that she had been consistent in her report of the incident. The defendant objected and argued that it "ain't fair" because the State should not be allowed to bring up the sexual assault "just because I made a good point." The defendant further stated that "[a]ll I'm saying is we bring the rape case back up, Your Honor, please don't let him limit my character references of the many women saying that I'm not a rapist because I want the jury to know that I'm really not a rapist, that it's B.S."

¶ 29    The trial court took a recess to consider the issue. After consideration, the trial court stated that the charges before the jury were whether the defendant possessed and delivered methamphetamine. Whether L.C. took the methamphetamine voluntarily or involuntarily was not an issue before the court. The trial court then ruled, "So because of that, and because I'm trying desperately to keep the criminal sexual assault out of this trial, I don't think it's appropriate." The trial court then denied the State's request to inquire regarding L.C.'s statement of being forced to use the methamphetamine.

¶ 30    The State then called Officer Logan Leverett, an officer with the Harrisburg Police Department. Officer Leverett stated that upon his arrival at the residence on October 25, 2022, the defendant came towards him and stated that he had given L.C. two lines of methamphetamine. Officer Leverett made no mention of other crimes.

¶ 31    A break was taken after Officer Leverett's testimony. Upon completion of the break, the trial court, outside the presence of the jury, informed the parties that he believed a jury instruction was needed because of L.C.'s testimony regarding the rape. The trial court discussed the proposed instruction and upon completion of the discussion, the defendant stated that he believed the

proposed instruction to be "fair." When the jury returned, the trial court read the following instruction:

> "Ladies and Gentlemen of the Jury, from time to time in the course of a trial witnesses testify to matters which are not before the Court or relevant to the case. As I admonished you at the beginning of this case the defendant is charged with two counts, possession of methamphetamine and methamphetamine delivery. You may have heard a witness testify about the allegation of another crime or bad act by the defendant. That statement is not part of the charges before this Court, it is not germane or relevant to the charges in this case and you should infer nothing from that statement."

¶ 32 The State then called Sergeant Curt Hustedde, an officer with the Harrisburg Police Department, who testified regarding the collection of evidence at the residence. The collection of evidence included a residue taken off a dresser, a baggy, and a rolled-up piece of paper, all of which Sergeant Hustedde identified in a photograph admitted as People's Exhibit 1. Officer Hustedde further testified that the residue was field tested by Officer William Duncan and was positive for methamphetamine. Officer William Duncan was also called by the State and testified regarding the positive field test for methamphetamine and that the sample was sent to the Illinois State Police Crime Laboratory for confirmation analysis.

¶ 33 The defendant asked for a sidebar, which the trial court allowed. Once the jury had exited, the defendant objected to the State calling all the law enforcement officers to testify regarding the physical evidence. The defendant argued that "[l]ike she already had one guy that does inventory and evidence in the evidence room. And then she just called another one that said the exact same thing that that one said." The trial court explained that "[i]t's called a chain of custody" and denied

13

the defendant's objection. The defendant also asked if the trial court was going to overrule if the State objected to his "chain of command." The defendant explained as follows:

"Chain of command. It starts with this girl to that one to this one to this one to say I'm not a rapist. To this one to say that [L.C.] is a liar, to the chain of command that this one's used drugs with her. To the chain that last night—the chain of command got to [L.C.] just sat up here and lied and said that she didn't ask for drugs from [an individual] and [that individual] is out there waiting all day to come in here and show, if no objection is made, a phone number, a text from last night at the motel, 618—."

The trial court interrupted the defendant and informed him that what he was describing was not an evidence chain of custody and was also not a chain of command. The State then called additional witnesses regarding the chain of custody of the physical evidence, and the confirmation from the Illinois State Crime Laboratory that the residue recovered by law enforcement at the defendant's residence was methamphetamine. There was no mention of other crimes by any of these witnesses.

¶ 34    The State's final witness was Detective Kaitlin Wilson of the Harrisburg Police Department. Detective Wilson testified that she had conducted an interview with the defendant on October 25, 2022. Detective Wilson stated that, during the interview, the defendant admitted that he had provided L.C. with two lines of methamphetamine and described how he laid out the lines on a dresser. That portion of the interview was played for the jury and the defendant objected "[o]nly to playing it in its entirety and not an altered clip of it." The defendant also interrupted the State's examination of the witness and requested that the whole interview be played, stating, "That is corrupt." The State ended its examination, and the defendant conducted his cross-examination focusing on the length of the interview compared to the length of the portion that was played.

14

¶ 35    The State rested and, outside the presence of the jury, the defendant made a request to admit the State's witness list as evidence and publish it to the jury. The defendant argued that "I did double dog dare them and they didn't call [a witness]. They disobeyed a double dog dare." The defendant stated that he believed that disobeying a double dog dare "shows reasonable doubt." The defendant also requested to be closer to the jury. The trial court denied both requests, but stated that the defendant could use the chalkboard if he so desired. Finally, the defendant requested that stand-by counsel become co-counsel, but that he continued representing himself. He stated that he did not know when to object or any reasons for objections, but that as co-counsel, stand-by counsel "could get in on the objection action." The trial court also denied that request, but allowed stand-by counsel to sit at the defendant's table so it would be easier for the defendant to seek advice.

¶ 36    The defendant then began his defense by calling Jeana Hudgins. Hudgins was incarcerated at the time, but was allowed to be unshackled during her testimony. Hudgins testified that she had known the defendant for almost four years and that they were good friends. Hudgins stated that she had been to the defendant's residence on several occasions and that the residence was a high traffic drug area. She also testified that she had used drugs with the defendant on the same dresser where law enforcement found the drug residue. On cross-examination, Hudgins admitted that she had been incarcerated since October 4, 2022, was still incarcerated on the date of the incident, and that she had a prior felony conviction.

¶ 37    Next, the defendant called Sadie Hernandez, Leslee Martin, Tracy Fly, Heaven Fitzgerald, and Janet Daugherty. Each of these witnesses testified regarding the high traffic drug area of the residence, and/or the numerous individuals that use illegal drugs on the same surface where law enforcement recovered the drug residue, and/or that it was within the defendant's character to give someone MSN in place of methamphetamine. None of these witnesses were at the residence on

15

the day in question and Hernandez and Martin testified that they had at least one prior felony conviction. The defendant did not testify and the defense rested.

¶ 38 The matter went to the jury and within an hour of their deliberations, sent a question to the trial court regarding People's Exhibit 3, the evidence receipt from the Harrisburg Police Department. The question was "On Exhibit 3 what was the complaint by L.C." The defendant immediately responded with, "We can't say." The defendant further agreed that the trial court should not answer the question, but respond that the jury had before it the evidence in the case and that the trial court could not comment further. That response was given to the jury and thereafter, the jury returned a guilty verdict on both counts. The trial court entered judgment, set the matter for sentencing, and revoked the defendant's bail. At that time, the defendant indicated that he no longer desired to represent himself and requested that stand-by counsel be appointed to represent him, which the trial court granted. No posttrial motion was filed.

¶ 39 The defendant was sentenced on June 20, 2023, to five years' incarceration on his conviction for possession of methamphetamine and seven years' incarceration on his conviction for the delivery of methamphetamine, sentences to run concurrently, followed by one-year mandatory supervised release. No post-sentencing motion was filed. The defendant filed a notice of appeal on July 10, 2023, bringing this matter before this court.

¶ 40                                    II. ANALYSIS

¶ 41 The defendant now raises the issue of whether the trial court violated the defendant's right to present a complete defense where it excluded all evidence of the dismissed criminal sexual assault allegation. The defendant acknowledges that this issue was not raised in a posttrial motion and thus, would generally be subject to forfeiture. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an issue for review, both a trial objection and a written posttrial motion are required). The

16

defendant argues, however, that he has raised a constitutional issue and that constitutional issues that were properly raised at trial are not subject to forfeiture for failing to file a posttrial motion. In the alternative, the defendant argues that this issue should be reviewed under the doctrine of plain error or ineffective assistance of counsel for failing to raise this issue in a posttrial motion.

¶ 42 In *Enoch*, our supreme court set out three types of claims that are not subject to forfeiture for failing to file a posttrial motion. *Id*. at 190. Those claims are (1) constitutional issues that were properly raised at trial and may be raised later in a postconviction petition, (2) challenges to the sufficiency of the evidence, and (3) plain error. *Id.* It is well established that criminal defendants are constitutionally guaranteed a meaningful opportunity to present a complete defense. *People v. Brock*, 2022 IL App (3d) 200430, ¶ 67. As such, the issue of whether the trial court violated the defendant's right to present a complete defense presents a constitutional issue that could later be raised in a postconviction proceeding. See generally *People v. Lewis*, 2017 IL App (1st) 150070, ¶ 13 (postconviction act provides a means for criminal defendants to challenge his or her conviction or sentence based on a substantial violation of a constitutional right). Therefore, we find that the defendant's claim falls within the constitutional issue exception and is not forfeited. We will address this issue on the merits and any arguments regarding alternative means of avoiding forfeiture are moot.

¶ 43 "When a party claims he was denied his constitutional right to present a complete defense due to an improper evidentiary ruling, the standard of review is abuse of discretion." *Brock*, 2022 IL App (3d) 200430, ¶ 67. A court abuses its discretion only where its decision is arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the court. *Id.*

17

¶ 44    The defendant argues that his defense in this matter was that L.C. had a motive to make false accusations against him; specifically, that L.C. had called law enforcement because she was mad at the defendant for giving her fake methamphetamine, MSN, instead of actual methamphetamine. The defendant states that he sought to argue that L.C. fabricated her allegations, including an allegation of sexual assault, against him to law enforcement in retaliation and that he falsely confessed to the methamphetamine charges in order to avoid prosecution for the more serious sexual assault allegation. The defendant further argues that he had attempted multiple times over the course of this case to introduce evidence of the sexual assault allegation since the evidence of the sexual assault allegation was relevant to his defense theories, but that the trial court firmly barred the evidence as irrelevant and against the defendant's best interest in order to avoid the risk of prejudice from other crimes evidence.

¶ 45    Although a defendant is constitutionally guaranteed an opportunity to present a complete defense, it is also settled law that a trial court may reject evidence on the grounds of irrelevancy if it has little probative value due to its remoteness, uncertainty, or possible unfair prejudice. *People v. Ward*, 101 Ill. 2d 443, 455 (1984). Other crimes evidence is generally inadmissible, not because it is irrelevant but instead, it is objectionable because it has too much probative value. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). A defendant is entitled to have his guilt or innocence evaluated solely on the basis of the charged offense and other crimes evidence is generally prohibited to protect the jury from convicting a defendant because he or she is a bad person deserving of punishment. *Id.*

¶ 46    Even where other crimes evidence may be admitted under an exception to the general rule of inadmissibility, a trial court may still exclude it if it determines that the prejudicial effect of the evidence substantially outweighs its probative value. *Id.* Trial courts have the authority and the

18

responsibility to control the presentation of evidence in a manner that minimizes juror confusion. *People v. Smith*, 406 Ill. App. 3d 747, 756 (2010). "[I]f the probative value of such evidence is so outweighed by the danger of undue prejudice or jury confusion, it should be excluded." *People v. Tijerina*, 381 Ill. App. 3d 1024, 1038 (2008).

¶ 47 Here, the trial court initially excluded certain evidence of the sexual assault allegation at the hearing on the State's second motion *in limine* on February 2, 2023. A motion *in limine* is a pretrial motion that requests an order excluding inadmissible evidence and prohibiting questions concerning such evidence, without the necessity of having the questions asked and objections thereto made in front of the jury. *People v. Ousley*, 235 Ill. 2d 299, 317 (2009). The State's second motion *in limine*, however, did not seek to exclude inadmissible evidence, but sought "to admit the Defendant's statements contained in the court transcripts and the audio and video recorded footage and statements, as well as the recording audio jail call, either in whole or in part ***." The State's motion noted that the requested evidence contained the defendant's statements related to other crimes which was why it was seeking a ruling on the admissibility of potentially redacted portions of the evidence that it sought to present to the jury.

¶ 48 The defendant objected to the redaction of the transcripts stating that his concern was that the State could "pick what she wants the jury to see and then there could be a line two lines down that would contradict what it says above it." The trial court stated that it could not imagine a situation where the defendant would want testimony concerning a possible criminal sexual assault to be evidence in front of the jury. The trial court determined that it would be prejudicial to have that information in front of the jury since the case was about drugs and introducing evidence of charges which no longer existed "could inflame the jury and prejudice you in this matter." The trial court stated that it would not allow the entire transcript to be admitted, but that the trial court

19

would consider any additional pages or lines to show context submitted by the defendant. The record does not indicate that the defendant submitted any additional pages or lines for the trial court's consideration prior to trial.

¶ 49   With regard to the body camera video, the defendant objected stating that he did not have "a good reason other than I think it would be prejudicial." More importantly, concerning the video of the defendant's interview with law enforcement, the defendant objected to the video being admitted stating that "the majority of that interview was in regards to a criminal sexual assault case, and I object to that being admitted to—I think it would be prejudicial to me for the jury to see that." As such, the defendant himself argued that the admission of the criminal sexual assault would be prejudicial and made no argument that the admission of the criminal sexual assault allegation was necessary to his defense.

¶ 50   The trial court stated, on numerous occasions throughout the trial, that the charges before the jury were whether the defendant possessed and delivered methamphetamine and that any evidence presented needed to relate to those charges. The defendant argues on appeal, however, that after L.C. herself brought up the sexual assault, any concerns about jury distraction were futile. However, when the State sought permission from the trial court to examine L.C. regarding her report of the incident, the defendant objected arguing that the State should not be allowed to bring up the sexual assault "just because I made a good point." The defendant had also previously requested the redaction of any evidence of the sexual assault from the property inventory record, as well as the laboratory report, and did not object to the trial court's proposed jury instruction after L.C.'s statement regarding rape. At various times during the course of this matter, the defendant acquiesced and actively engaged in ensuring that no evidence of the sexual assault was presented to the jury. "[A] defendant may not request [or agree] to proceed in one manner and later

20

contend on appeal that the course of action was in error." *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17.

¶ 51    We acknowledge that the defendant, on several occasions during trial, stated that the trial court should allow evidence regarding the sexual assault allegations. On each occasion, however, the defendant's focus was on his desire to demonstrate that he was not a "rapist" and not, as he now argues, necessary evidence for his defense of the drug charges. The defendant did not file any pretrial motions relating to the dismissed sexual assault charge, nor at any time during trial did he motion to have any specific evidence related to the sexual assault allegations admitted.

¶ 52    We also find that the defendant was able to present his defense that L.C. made allegations against the defendant in retaliation for receiving fake methamphetamine. The defendant put forth that defense in this opening statement; to include explaining why he had made false statements confessing to the drug offenses. He was able to cross-examine L.C. on whether he had provided L.C. methamphetamine and the reason for supplying the drug, along with the examination of other witnesses regarding methamphetamine and its usage as it related to the charges. Although the purpose of closing arguments is to provide the parties a final opportunity to review the admitted evidence before the jury, the defendant was also able to argue his defense again in his closing statement, even though the defendant had presented absolutely no evidence to contradict L.C.'s testimony that the defendant had provided her methamphetamine or any evidence that his admissions to the drug charges were false. See *People v. Williams*, 2022 IL 126918, ¶ 40 (closing arguments are not evidence).

¶ 53    The defendant argues that the trial court should have allowed the other crimes evidence so that the defendant could demonstrate that he only confessed to the lesser drug charges to avoid the more serious sexual assault charge. There was, however, never any restriction on the defendant to

21

provide evidence that his repeated confessions were based on the avoidance of a more serious offense. As the trial court reminded the parties during trial, there was no motion before the court requesting that the criminal sexual assault evidence be kept out and although the trial court could sustain an objection at the time, there was no ruling that prohibited it. The only ruling on the State's motion *in limine* pertained to the admission of the entire transcripts.

¶ 54 As previously stated, a trial court may still exclude other crimes evidence if it determines that the prejudicial effect of the evidence substantially outweighs its probative value. *Donoho*, 204 Ill. 2d at 170. Here, the trial court did not allow the admission of other crimes evidence in an attempt to keep the focus on the actual charges and to ensure no prejudice against the defendant from the introduction of evidence of a charge that no longer existed. Based on the totality of the record, we agree with the trial court that any evidence of the sexual assault allegation would have been substantially more prejudicial than its probative value since the charges before the jury were drug related. We also find that the exclusion of the other crime evidence did not hinder the defendant's ability to present his defense that the drug charges were in retaliation for allegedly supplying MSN instead of methamphetamine.

¶ 55 Therefore, based on the specific facts of this matter, we find that the trial court did not abuse its discretion when it excluded evidence of the sexual assault allegation because its decision was not arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the trial court. Accordingly, we find that the defendant was not denied his constitutional right to present a complete defense due to an improper evidentiary ruling.

¶ 56                                    III. CONCLUSION

¶ 57 For the foregoing reasons, we affirm the judgment of the Saline County trial court.

¶ 58 Affirmed.